**DISTRICT OF COLUMBIA, Appellant,**

v.

**Janet D. McNEILL, Appellee.**

**No. 90–CV–804.**

District of Columbia Court of Appeals.

Argued June 3, 1992.
Decided Sept. 29, 1992.

---

Susan S. McDonald, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Gary S. Freeman, with whom Jack H. Olender, Harlow R. Case, and Kim M. Keenan, Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, KING, Associate Judge, and PRYOR, Senior Judge.

ROGERS, Chief Judge:

In this wrongful death and survival action, appellee Janet D. McNeill, individually and as personal representative of the Estate of Baby Boy McNeill, sued the District of Columbia for negligent treatment and provision of medical care to herself and her fetus. The jury found for appellee, individually and as representative of the estate, on the theory that the District was negligent in determining appellee's estimated date of confinement and allowing her pregnancy to go post-term, thereby causing the death of the fetus as well as Ms. McNeill's subsequent physical and emotional injuries.[1] On appeal, the District contends that there was insufficient evidence that Ms. McNeill suffered any independent injury, feared for her own safety during the birth of the still-born fetus, or suffered any "serious and verifiable" emotional distress as a result of the District's negligence.[2] We affirm.

I

In November of 1987, appellee Janet McNeill sought prenatal care at the Anacostia W Street Clinic. Based on her last menstrual period, the clinic determined an estimated date of confinement (due date) of April 30, 1988. An ultrasound examination was subsequently performed, and Ms.

---

1. The jury awarded $100,000 to Ms. McNeill in the survival action and $127,500 for her personal injuries.

2. The District appeals only from the judgment entered in favor of Ms. McNeill on her individual claims of personal injury. Neither the jury's finding of negligence by the District nor the award of damages to the estate is challenged in this appeal.

McNeill was informed that her due date had been revised to May 22, 1988. In March 1988, Ms. McNeill transferred her prenatal care to D.C. General Hospital. The following month the hospital performed an ultrasound examination and revised Ms. McNeill's due date to May 25, 1988.

On May 17, 1988, Ms. McNeill called the hospital to report that she was feeling tightness in her lower abdomen. She went to the hospital for a scheduled appointment on the morning of May 19, 1988, and she explained to one of her attending physicians, Dr. Gerald Stagg, that she had felt no fetal movement for about twenty-four hours and that she had abdominal cramps. She was placed on a fetal monitor, and she was thereafter informed that the fetus was dead. Around 10:00 a.m. that morning, Ms. McNeill's labor was induced. Sixteen hours later, around 2:00 a.m. on May 20, 1988, she delivered a stillborn child.

At trial, Ms. McNeill testified that she had suffered physical and emotional injury as a result of the District's negligence in miscalculating her due date and allowing her pregnancy to go post-term. She testified, specifically, that she had experienced pain in her lower back and abdomen in the days prior to being admitted to the hospital,[3] and that during the induced labor she experienced intense pain, which was not relieved by an epidural anesthetic.[4] Ms. McNeill further testified that she had been unable to sleep for two days after the stillbirth, that she had been in shock, and that she has suffered from recurring nightmares regarding the stillborn's birth and its appearance.[5]

With regard to Ms. McNeill's personal injuries, Thurston Yerby, her fiance, testi-fied that after the stillbirth, Ms. McNeill was withdrawn, in pain, and having nightmares. Dr. Ucker, appellee's obstetrical expert, testified that he believed that the fetus had died on May 18, 1988, two days before its delivery. The District's obstetrical expert, Dr. Jeffrey King, testified that Ms. McNeill carried a dead fetus in utero for at least 24 hours prior to delivery, had suffered a fever during labor for which she was given antibiotics, and that the fever was evidence of an infection given by the dead fetus to Ms. McNeill late in the labor. Leandra Cooke, a social worker who met with Ms. McNeill at the hospital after the stillbirth, testified that Ms. McNeill "expressed to me that she was having some difficulty adjusting to the death of her infant."

## II

■ "A pregnant woman, like any other patient, is owed a duty of care by her doctor throughout the duration of the patient-doctor relationship, and thus the doctor may be liable for any injury negligently inflicted upon the patient." *Coughlin v. George Washington Univ. Health Plan, Inc.*, 565 A.2d 67, 70 (D.C.1989); *see* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 369 n. 30 (5th ed. 1984) (pregnant women traditionally given recovery for their own injuries caused by miscarriage). Thus, a woman can recover for physical and emotional injuries arising from the negligent mismanagement of her pregnancy and a resulting miscarriage. *Coughlin v. George Washington Univ., supra,* 565 A.2d at 68–69, 70.

■ In addition, a plaintiff can recover for the separate tort of negligent infliction

---

**3.** D.C. General Hospital records indicate that Ms. McNeill informed the hospital's clinic that she was experiencing pain in her lower back on May 17, 1988.

**4.** Dr. Fiebiger testified that the anesthesia given to Ms. McNeill could not deaden all of the pain, and that Ms. McNeill's perception of pain was intensified by emotion. He explained that "I would anticipate that she would be more uncomfortably in that respect."

**5.** At birth, the stillborn was shown to Ms. McNeill. It appeared "gray and scaly." Dr.

Fiebiger testified that the stillborn was macerated: "there were some skin changes, peeling, some swelling of the skin, indicating that it ... had been dead for awhile." Dr. Dae Koh, the pathologist who examined the stillborn, explained that "maceration is a condition of the body when baby dies inside of the mother's womb.... [T]he tissues and organs start to deteriorate.... And the first sign you can see is the skin detaches from the underlying tissue and it peels off.... And it forms the blister."

of emotional distress if the distress results from a direct physical injury or if "plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety," *Williams v. Baker,* 572 A.2d 1062, 1067 (D.C.1990) (en banc); *Jones v. Howard Univ., Inc.,* 589 A.2d 419, 423 (D.C.1991), or if the plaintiff is "physically endangered" as a result of the defendant's negligence. *Williams v. Baker, supra,* 572 A.2d at 1073 (mother not in zone of danger where she is not physically endangered by the defendant's negligent diagnosis and treatment of her 3 year old son). Moreover, if there is physical injury, the injury need not be substantial in order to sustain a tort claim. *Asuncion v. Columbia Hosp. for Women,* 514 A.2d 1187, 1189 (D.C.1986). In the absence of any physical injury, the emotional distress must be "serious and verifiable." *Jones v. Howard Univ., supra,* 589 A.2d at 424; *see also Williams v. Baker, supra,* 572 A.2d at 1068.[6]

█ On the other hand, a plaintiff cannot recover for the grief suffered because of the death of a child in utero. *See Hughes v. Pender,* 391 A.2d 259, 261 n. 2 (D.C.1978) (survival statute does not purport to compensate family for grief that they have suffered) (citing *Runyon v. District of Columbia,* 150 U.S.App.D.C. 228, 231, 463 F.2d 1319, 1322 (1972)); *cf. McKetbean v. Washington Metro. Area Transit Auth.,* 588 A.2d 708, 718 (D.C.1991) (denying recovery for negligent infliction of emotional distress where distress based solely upon observation of injury to relatives because plaintiff not in "zone of danger") (citing *Williams v. Baker, supra,* 572 A.2d at 1073).

█ Although the District contends that Ms. McNeill presented no evidence that she suffered any physical or serious emotional injury, other than grief, as a result of the District's negligence, the evidence is to the contrary, showing that she suffered both physical and emotional injuries as a result of the District's negligence. *See Coughlin v. George Washington Univ., supra,* 565 A.2d at 71 ("Whether the miscarriage ... resulted in an injury to the mother is an issue of fact that must be resolved at trial through proof by competent evidence"); *see also Modaber v. Kelley,* 232 Va. 60, 348 S.E.2d 233, 237 (1986) (not error to instruct that injury to unborn child in womb was to be considered physical injury to mother and by allowing damages for injury and mental anguish as result of fetal death).

Both parties presented expert testimony that Ms. McNeill carried the dead fetus for at least twenty-four hours before being delivered. *See Coughlin v. George Washington Univ., supra,* 565 A.2d at 71 (physical injury shown from fact that a woman had to carry dead fetus *in utero* for six days prior to its delivery).[7] Ms. McNeill also testified that she was in pain on May 17, 1988, when she called D.C. General Hospital to report the symptoms to her prenatal care provider. Because her labor had to be induced two days later, the jury could reasonably infer that Ms. McNeill had not been in labor on May 17th, and that the pain in her lower back and abdomen was a result of the deteriorating condition of the fetus, as described in expert testimony. Ms. McNeill further testified that she had experienced severe pain during the induced labor that did not subside even though she was given anesthetic medication to dull the pain. Her attending physician, Dr. Fiebiger, testified that because the perception of pain is intensified by the emotional circumstances, Ms. McNeill, in labor with a dead fetus, "more uncomfor-

---

6. The District maintains, for the first time on appeal, that Ms. McNeill cannot recover for her emotional injuries unless they are "serious and verifiable," as required under the rubric of the tort of negligent infliction of emotional harm. We need not reach this issue. Ms. McNeill is not seeking recovery under a separate theory of negligent infliction of mental distress as did the plaintiff in *Williams v. Baker, supra,* 572 A.2d at 1066.

7. Ms. McNeill testified that she suffered vaginal lacerations during the delivery that required sutures but suffered none during a subsequent delivery. However, Dr. Siri Fiebiger, one of Ms. McNeill's attending physicians, testified that the vaginal lacerations were normal in a first-time delivery.

tabl[e] in that respect." This was evidence from which the jury could find that Ms. McNeill suffered personal injury beyond the grief arising from the death of her child. *See Ledford v. Martin,* 87 N.C.App. 88, 359 S.E.2d 505, 507 (1987) (in negligence action contending mismanagement of pregnancy resulting in stillbirth, severe pain is physical injury). Moreover, Dr. King, the District's obstetrical expert, testified that Ms. McNeill suffered from an infection and fever late in labor that was caused by the dead fetus.

█ With regard to emotional distress and mental anguish, Ms. McNeill testified that she had been unable to sleep after she delivered the stillborn infant, that she had been in shock, and that she suffers from recurring nightmares regarding the birth of the stillborn and the stillborn's appearance. Her fiance and a social worker testified about her mental state following the stillbirth. *See Modaber v. Kelley, supra,* 348 S.E.2d at 237 (emotional trauma that is not caused solely by death of fetus but rather anguish suffered by mother because the death of fetus is occasioned by negligence is compensable) (citing *Snow v. Allen,* 151 So. 468, 471 [Ala.1933]).

Thus, a reasonable jury could reasonably have found that Ms. McNeill suffered both physical and emotional injuries as a result of the negligent management of her pregnancy that resulted in the death of her fetus in utero. *See Modaber v. Kelley, supra,* 348 S.E.2d at 239 (jury could rely upon appearance and demeanor of plaintiff on stand as she recalled events to find that death of fetus caused plaintiff emotional distress). *See also Finkelstein v. District of Columbia,* 593 A.2d 591, 594 (D.C.1991) (en banc) (judgment notwithstanding the verdict proper only where no reasonable person, viewing evidence in light most favorable to prevailing party, could reach a verdict in favor of that party). Furthermore, the trial judge instructed the jury that an award based on the grief suffered by plaintiff was impermissible. *See Christian v. United States,* 394 A.2d 1, 23 (D.C. 1978) (jury presumed to follow instructions absent evidence to contrary).

Accordingly, we affirm judgment.