Anne CAUMAN, et al., Appellants,

v.

**GEORGE WASHINGTON UNIVERSITY,**
**et al., Appellees.**

No. 91–CV–710.

District of Columbia Court of Appeals.

Argued Sept. 22, 1992.
Decided Jan. 29, 1993.

Frederic W. Schwartz, Jr., Washington, DC, for appellants.

Alfred F. Belcuore, with whom Joseph Montedonico, Washington, DC, was on the brief, for appellee George Washington University.

Daniel E. Schultz, Washington, DC, for appellee Children's Hosp.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Appellants, husband and wife, filed this action seeking damages for emotional injuries caused by the alleged negligence of appellees' employees which ultimately resulted in the "wrongful birth" of a disabled child. The trial court dismissed the case under Super.Ct.Civ.R. 12(b)(6) for failure to state a claim upon which relief could be granted. Our decisions have left open the question of whether such a claim may be asserted under District of Columbia law. We answer that question today in the negative and affirm the order of dismissal.

## I

Appellant Anne Cauman and her husband consulted with Dr. John Larsen, Jr., a specialist in genetic counseling at George Washington University Hospital, regarding Ms. Cauman's pregnancy. Because she was then in her late thirties, Ms. Cauman and her husband were fearful that their child might be born with some defect or impairment. They told Dr. Larsen that the fetus would be aborted in the event that he detected any genetic abnormalities. After performing an amniocentesis on Ms. Cauman and analyzing specimen chromosomes from both parents, Dr. Larsen advised them that these tests revealed no abnormalities.

The couple then sought a second opinion from Dr. Kenneth Rosenbaum, a genetics specialist at Children's Hospital. As they had done with Dr. Larsen, they informed Dr. Rosenbaum that the fetus would be aborted if he discovered any genetic abnormalities. Dr. Rosenbaum reviewed the data collected by Dr. Larsen and advised them that he concurred in Dr. Larsen's opinion.

Thus assured by both doctors, Ms. Cauman elected to continue her pregnancy and not to seek an abortion. The pregnancy appears to have been uneventful. Regrettably, however, the son that was born to Ms. Cauman a few months later was afflicted with severe mental and physical disabilities. Postnatal testing revealed that these disabilities were due to a chromosomal defect. After appellants concluded that they were incapable of providing for their son's special needs, he was adopted by another couple at the age of ten months and now resides in another state. The child is not a party to this litigation.

Appellants sued the hospitals and the physicians [1] for damages for the emotional injuries they suffered as a result of the birth of their disabled son.[2] They alleged that these injuries stemmed from appellees' negligence in failing to discover the genetic abnormalities in the fetus because they would have sought an abortion if the doctors had informed them of their son's disabilities. The trial court dismissed appellants' complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

## II

■ "Dismissal under Rule 12(b)(6) is warranted only when 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.' " *Klahr v. District of Columbia,* 576 A.2d 718, 721 (D.C.1990), quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing the decision of the trial court, we must construe appellants' complaint in the light most favorable to their claim and must accept their allegations as true. *Haymon v. Wilkerson,* 535 A.2d 880, 882 (D.C.1987); *McBryde v. Amoco Oil Co.,* 404 A.2d 200, 202 (D.C.1979). We conclude that, even under this generous standard, the dismissal of appellants' claim was proper because District of Columbia law does not provide any basis to hold appellees liable for appellants' emotional injuries.

■ The District of Columbia recognizes the tort of "wrongful birth." *Haymon, supra,* 535 A.2d at 886.[3] In *Haymon* we

---

1. The claims against the physicians were eventually settled, leaving only the two hospitals as defendants.

2. The complaint also sought recovery for loss of income, medical expenses, and other economic damages, but these claims were all voluntarily dismissed by appellants with prejudice. Consequently, this case does not present us with the question of whether parents may be entitled to recover economic damages, *e.g.,* the cost of psychological or psychiatric treatment, for emotional injuries suffered by the parents on ac-

count of a wrongful birth. *See, e.g., Smith v. Cote,* 128 N.H. 231, 244, 513 A.2d 341, 350 (1986) (analyzing parental claim for economic damages resulting from wrongful birth).

3. "In a wrongful birth action ... a parent of an abnormal, unhealthy child claims that the physician's negligent advice or treatment deprived the parent of the right to decide whether to avoid the birth of a child with congenital defects. The courts that have been presented with this issue are virtually unanimous in concluding that some measure of recovery should be per-

held that a parent may recover "extraordinary medical and other expenses attributable to the care of [the] child" in a wrongful birth action. *Id.* Nothing was said, however, about damages for emotional injuries suffered by the parents; indeed, *Haymon* explicitly left undecided the issue of whether such damages are recoverable. *See id.* at 886 n. 5. That is the question facing us here.

■ We find guidance in answering that question in our decision in *Williams v. Baker,* 572 A.2d 1062 (D.C.1990) (en banc). In *Williams* we held that damages for negligent infliction of emotional distress, previously not available in the District of Columbia without some accompanying physical injury, could be recovered absent physical injury in certain limited circumstances:

> [I]f the plaintiff was in the zone of *physical danger* and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a direct physical impact as a direct result of defendant's negligence.

*Id.* at 1067 (emphasis added). Stated slightly differently, the plaintiff must be

"physically endangered as a result of the defendant's alleged negligence" in order to recover. *Id.* at 1073. In addition, the emotional distress for which damages are sought "must be 'serious' and 'verifiable.'" *Id.* at 1068 (citation omitted); *see also Jones v. Howard University,* 589 A.2d 419, 424 (D.C.1991) (elaborating on these requirements).[4]

■ Appellants' complaint fails to allege the prerequisites to a claim for negligent infliction of emotional distress which we identified in *Williams v. Baker.* In that case we held

> that one may recover for emotional distress caused by witnessing injury to an immediate family member only if the claimant was in the zone of physical danger and as a result feared for his or her own safety.

572 A.2d at 1064 (footnote omitted). There is no claim in the instant case that the conduct of either doctor or either hospital caused physical injury to anyone.[5] Hence there is no way to read the complaint as alleging that appellants witnessed injury to an immediate family member, or that they were in a "zone of physical danger," or that appellees' negligence caused them to fear for their safety.[6] The *Williams* opin-

---

mitted in wrongful birth cases." *Haymon, supra,* 535 A.2d at 883 (citations omitted). *See generally* Annotation, *Recoverability of Compensatory Damages for Mental Anguish or Emotional Distress for Tortiously Causing Another's Birth,* 74 A.L.R.4th 798 (1989).

**4.** A week after oral argument in the instant case, this court decided the case of *District of Columbia v. McNeill,* 613 A.2d 940 (D.C.1992). Appellants, in a post-argument pleading, suggest that *McNeill* has a bearing on this case. *McNeill* was an appeal from an award of damages to the plaintiff for physical and emotional injuries resulting from a hospital's negligent mismanagement of her pregnancy and resulting miscarriage. Appellants maintain that *McNeill,* when read in conjunction with *Jones v. Howard University, supra,* supports the proposition that "in a course of treatment, as here, which included a realized risk of emotional harm, that harm is compensable if it occurs." Appellants misread both *McNeill* and *Jones.* Negligent infliction of emotional distress was not a basis for any claim raised in *McNeill,* and thus we find it inapposite. As for *Jones,* it merely applied the requirements

of *Williams* to a particular set of facts and held that whether the plaintiff was within the "zone of physical danger" was a material issue of fact precluding summary judgment. Neither *McNeill* nor *Jones* hints at the result that appellants are seeking here.

**5.** Appellants did not allege in the complaint, nor do they now assert, that their child's disabilities were caused by appellees' negligence. Nor can the complaint be read as alleging any physical danger to the mother, either during the genetic testing or at the time of birth, so as to enable her to recover under *Williams* for emotional distress. The injury suffered by Ms. Cauman stems from allegedly negligent medical advice, not from the amniocentesis or the delivery of her child.

**6.** We assume, for the purposes of this appeal, that the statement in the complaint that appellants suffered "great pain of mind, anxiety, anguish, grief, and severe emotional distress" was sufficient to establish that their emotional injuries were serious and verifiable. *See Williams, supra,* 572 A.2d at 1068.

ion accurately foreshadowed the result in this type of case:

> It is readily apparent that in the vast majority of instances, a plaintiff will find it impossible to establish that plaintiff was within a zone of danger created by a medical misdiagnosis of a family member. Diagnoses, by their nature, tend not to create immediate danger to others.

*Id.* at 1073 n. 19. We concluded in *Williams* that "the plaintiff mother was not physically endangered as a result of the defendant's alleged negligence" in failing to diagnose properly her son's medical condition, and therefore that she could not recover on a theory of negligent infliction of emotional distress. *Id.* at 1073. The result can be no different here. Neither appellant was physically endangered as a result of appellees' negligence. Therefore, under *Williams*, there is simply no factual predicate alleged in the complaint upon which to base their claim for damages. The complaint was properly dismissed in accordance with District of Columbia law.

In actuality, then, appellants are asking us to broaden the reach of *Williams*. Appellants argue that the same "concerns" [7] motivating this court to adopt the "zone of danger" approach, and to discontinue use of the more restrictive "impact test," would justify extending *Williams* to include emotional injuries resulting from a wrongful birth.

We are, of course, bound to follow the actual holding of *Williams*,[8] and we are unpersuaded that the prudence reflected in our adoption there of the "zone of danger" rule would be enhanced by extending its reach. In *Williams* this court examined the various doctrines adopted by different courts in dealing with claims for negligently inflicted emotional distress, 572 A.2d at 1064–1069, but deliberately chose to limit relief for such distress to a narrow class of claimants, namely, persons who "witness[ ] injury to an immediate family member," but "only if the claimant was in the zone of physical danger and as a result feared for his or her own safety." *Id.* at 1064. We concluded that there were "strong public policy considerations against imposing virtually infinite liability based on foreseeability when the [defendant's] conduct is merely negligent," *id.* at 1069, and went on at some length to explain the reasons for this conclusion. *Id.* at 1069–1073. Appellants seek precisely such a result here and are asking this court to modify the law in a way it only recently concluded would be unwise.[9] We decline to do so. If any such change in the law is to be made, we think it is "best left to measured legislative action rather than judicial fiat." *Flowers v. District of Columbia*, 478 A.2d 1073, 1078 (D.C.1984).[10]

Appellants buttress their argument for extending *Williams* by citing cases in several states which would allow recovery on a

---

7. Appellants contend that these parallel "concerns" are (a) the need to effectuate the basic compensation policy underlying tort law, (b) the need to recognize that emotional injuries occur even when there is no physical injury, (c) the need to limit emotional injury damages to a narrow class of persons (as defined by a direct duty of care), and (d) the need to limit emotional injury damages to cases in which such damages are likely to be significant.

8. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

9. Appellants contend that this is a different kind of case because they sought medical advice to avoid the precise problem which befell them, and thus the emotional injuries they sustained were easily foreseeable. But foreseeability was expressly rejected by the court in *Williams* as a litmus test for liability. *See* 572 A.2d at 1070 ("We are not persuaded that this jurisdiction

should go beyond the zone of danger rule to allow bystander recovery for mental distress on the basis of the foreseeability of risk test....."). Therefore, it is of no moment that *Williams* was a bystander case and this is not. We see no reason to revisit the foreseeability issue now.

10. *Flowers* was a case in which a woman who thought she had been surgically sterilized after having two children unexpectedly became pregnant again and in due course gave birth to a third child. She sued the District of Columbia (the employer of the doctors who performed the surgery) under the doctrine of *respondeat superior*, seeking to recover the costs of rearing that child. This court affirmed the dismissal of her claim, noting the complexity of public policy issues arising in the context of wrongful birth law and suggesting that a legislative resolution of those issues would be preferable to a judicial one. 478 A.2d at 1077–1078.

claim such as theirs.[11] There are, however, a number of cases in other states in which such recovery would be denied.[12] We are not bound, of course, by any of these decisions. None sways us from our belief in the correctness of our holding in *Williams* and of the cautious approach that led to that holding.

## III

Alternatively, appellants argue that, even if *Williams* does not provide a basis for their claim, the complaint sufficiently states a cause of action for the denial of their right to make a medical decision based on informed consent. *See Crain v. Allison,* 443 A.2d 558, 561–562 (D.C.1982) (holding that a physician has a duty to make disclosure that is "reasonable under the circumstances" so that the patient may make "an intelligent and informed choice" to undergo or reject a proposed treatment). This argument is without merit.

What the law calls "informed consent" is more accurately characterized as informed consent to *medical treatment.* The risk of harm must inhere in the treatment itself. *See, e.g., Gordon v. Neviaser,* 478 A.2d 292, 295–296 (D.C.1984); *Canterbury v. Spence,* 150 U.S.App.D.C. 263, 273, 464 F.2d 772, 782 (1972) (physician has "a duty to warn of the dangers lurking in the proposed treatment"). There are no allegations whatsoever in appellants' complaint supporting such a theory of recovery, *e.g.,* that appellants were inadequately informed about the risks of amniocentesis. Even if there were, appellants could not prevail on their claim for emotional injuries under such a theory. Assuming for the sake of argument that the complaint sufficiently alleges a breach of a duty to disclose owed by appellees to appellants, it still does not meet the requirements of *Williams* for stating a claim for emotional injuries.

Nothing in *Jones v. Howard University, supra,* requires us to hold otherwise. In a footnote in *Jones,* we said that we did "not rule out the possibility that a plaintiff could recover for emotional harm under an informed consent theory." 589 A.2d at 422 n. 5. We added, however, that "Mrs. Jones's emotional harm ... was not the result of the materialization of an unrevealed risk of her medical treatment." *Id.* In this case likewise, appellants' emotional harm was not attributable to an unrevealed risk of any medical treatment undergone by Ms. Cauman. There is no connection between her consent to be tested (or her husband's consent to be tested) and the emotional injury resulting from the child's being born disabled. Because appellants' decision to let the pregnancy proceed to term was not the product of their consent to any medical treatment, their claim for damages for emotional distress cannot be founded on a theory of informed consent.

11. *See, e.g. Andalon v. Superior Court,* 162 Cal. App.3d 600, 611, 208 Cal.Rptr. 899, 905 (1984); *Blake v. Cruz,* 108 Idaho 253, 258, 698 P.2d 315, 320 (1984) (allowing recovery for emotional distress, but not for grief and anguish); *Viccaro v. Milunsky,* 406 Mass. 777, 781, 551 N.E.2d 8, 11 (1990); *Eisbrenner v. Stanley,* 106 Mich.App. 357, 365, 308 N.W.2d 209, 213 (1981); *Berman v. Allan,* 80 N.J. 421, 433, 404 A.2d 8, 14–15 (1979); *Naccash v. Burger,* 223 Va. 406, 416, 290 S.E.2d 825, 831 (1982); *Harbeson v. Parke-Davis, Inc.,* 98 Wash.2d 460, 476, 656 P.2d 483, 494 (1983); *see also Phillips v. United States,* 575 F.Supp. 1309, 1318 (D.S.C.1983) (discussing South Carolina law).

12. *See, e.g., Garrison v. Medical Center of Delaware, Inc.,* 581 A.2d 288, 293 (Del.1989); *Moores v. Lucas,* 405 So.2d 1022, 1026 (Fla.Dist.Ct.App. 1981); *Atlanta Obstetrics & Gynecology Group v. Abelson,* 260 Ga. 711, 713, 398 S.E.2d 557, 560 (1990); *Siemieniec v. Lutheran General Hospital,* 117 Ill.2d 230, 262, 111 Ill.Dec. 302, 318–319, 512 N.E.2d 691, 707–708 (1987); *Arche v. United States Department of the Army,* 247 Kan. 276, 283, 798 P.2d 477, 482 (1990); *Girdley v. Coats,* 825 S.W.2d 295, 296 (Mo.1992); *Smith v. Cote,* 128 N.H. 231, 244–246, 513 A.2d 341, 350–351 (1986); *Becker v. Schwartz,* 46 N.Y.2d 401, 414–415, 413 N.Y.S.2d 895, 902–903, 386 N.E.2d 807, 814 (1978); *Azzolino v. Dingfelder,* 315 N.C. 103, 117, 337 S.E.2d 528, 537 (1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986); *Jacobs v. Theimer,* 519 S.W.2d 846, 849–850 (Tex.1975); *Dumer v. St. Michael's Hospital,* 69 Wis.2d 766, 775, 233 N.W.2d 372, 377 (1975); *see James G. v. Caserta,* 175 W.Va. 406, 332 S.E.2d 872, 882–883 (1985) (by implication). Some of these cases, such as *Azzolino v. Dingfelder,* refuse to recognize a cause of action for wrongful birth. Others, such as *Smith v. Cote* and *Jacobs v. Theimer,* recognize the cause of action but refuse to allow damages for emotional distress.

## IV

District of Columbia law does not recognize a claim for negligent infliction of emotional distress resulting from a wrongful birth. We hold, therefore, that appellants' complaint was properly dismissed under Rule 12(b)(6). The order of dismissal is

*Affirmed.*

FERREN, Associate Judge, concurring:

Given our existing rules on damages for negligently inflicted emotional distress, as set forth in *Williams v. Baker,* 572 A.2d 1062 (D.C.1990) (en banc), I agree with the decision to affirm the trial court's dismissal of appellants' suit. I write separately only to explain why, even under the alternative rules I proposed in *Williams v. Baker,* 572 A.2d at 1074–76 (FERREN, J., concurring in part and dissenting in part), plaintiffs could not recover in this case.

In *Williams v. Baker,* I questioned a number of the limitations placed by the majority on damages for negligently inflicted emotional distress, including the zone-of-danger rule.[1] Nonetheless, I agreed then, as I do now, that plaintiffs may bring such claims only on the basis of allegations that the defendant's negligence has physically endangered another. In this case, as Judge TERRY points out, appellants do not claim that appellees presented any physical danger to the child or to the child's mother. Thus, even under the approach I would have preferred for claims for negligently inflicted emotional distress, appellants would still have failed to state a claim.

---

**1.** Specifically, I proposed that in order to show serious and verifiable emotional distress about negligently inflicted danger or injury to a third party, the plaintiff must show that she or he:

(1) has a close personal relationship with a person who is physically endangered by the defendant's negligence, (2) is present at the scene of the negligent act or omission and is, at the time, aware of the danger to the third party, and (3) as a result, suffers emotional distress beyond what a disinterested witness would have suffered and beyond what the plaintiff would have otherwise suffered if not present at the scene of the negligent act or omission.

*Id.* at 1075.