Barbara J. MACKEY, Appellant,

v.

UNITED STATES of America, et al., Appellees.

No. 92–5200.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1993.

Decided Nov. 5, 1993.

Clifford A. Brooks, Washington, DC, argued the cause for appellant. With him on the briefs was William L. England, Jr., Washington, DC.

Michael T. Ambrosino, Asst. U.S. Atty., Washington, DC, argued the cause for appellee United States. With him on the brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Karen L. McDonald, Asst. Corp. Counsel, Washington, DC, argued the cause for appellee District of Columbia. With her on the brief were John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC.

Before: MIKVA, Chief Judge, WALD and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant's aunt, Arlena Mackey, died on December 9, 1986, while in the care of D.C. General Hospital ("D.C. General"). Neither D.C. General nor St. Elizabeth's Hospital ("SEH"), the federal mental health institution at which Mackey had resided between 1964 and 1986, informed appellant that her aunt had passed away until six weeks after the date of death. Appellant Barbara Mackey sued the District of Columbia and the United States for intentional infliction of emotional distress;[1] negligent infliction of emotional distress; and negligent interference with appellant's right to possession of, and right to bury or otherwise dispose of, Mackey's body.

Appellant's claims against the District of Columbia were tried to a jury and her claims against the United States were simultaneously tried to the District Court. The jury returned a verdict in appellant's favor, awarding her $25,000 in damages. The trial court thereafter granted a motion by the District of Columbia for judgment as a matter of law and set aside the jury's verdict. *Mackey v. United States*, No. 89–2984, slip op. (D.D.C. Apr. 23, 1992) ("*Mem.*"), *reprinted in* Plaintiff's Appendix ("App.") 30. However, the District Court found the United States liable for negligently interfering with Barbara Mackey's right to possession of her aunt's body, and awarded appellant a $10,000 judgment. The trial court refused to award further damages on appellant's claim for negligent infliction of emotional distress, finding the evidence on this claim insufficient and

---

1. At the close of plaintiff's case-in-chief, the District Judge dismissed this claim, finding that no evidence had been presented to support it. Appellant does not challenge that ruling.

828

uncorroborated. *Mackey v. United States*, No. 89–2984, slip op. (D.D.C. Feb. 10, 1992) ("*Mem.*"), *reprinted in* App. 19.

Because we find that appellant offered sufficient evidence at trial from which a reasonable juror could have found negligence, we reinstate the jury's verdict against the District of Columbia. However, we affirm the District Court's refusal to award further damages against the United States on the claim of negligent infliction of emotional distress. The trial court correctly concluded that, on this record, District of Columbia law does not allow a presumption of damages for negligent infliction of emotional distress.

## I. BACKGROUND

Mackey was a resident and patient at SEH from 1964 until late 1986. On November 28, 1986, Mackey was transferred to D.C. General where she remained a patient until her death on December 9, 1986. It was undisputed at trial that neither SEH nor D.C. General notified appellant (or any other relative) of Mackey's transfer to D.C. General, of her critical condition while at D.C. General or of her death. Without the knowledge or consent of any family member, D.C. General released Mackey's remains for burial in a pauper's grave on December 19, 1986. Appellant learned of her aunt's death in a January 21, 1987 letter from SEH concerning funds remaining in Mackey's account.

As Mackey's primary care provider, SEH was responsible for furnishing D.C. General with vital information about the patient. To this end, SEH provided D.C. General with a copy of Mackey's "face sheet." This document, which is usually kept at the top of a patient's records on the hospital ward, is supposed to contain the most current, accurate information on a patient, including the name, address and telephone number of the patient's next of kin. Trial Transcript ("Tr.") at 3A–38, *reprinted in* Plaintiff's Supplemental Appendix ("S.A.") 74. It was established at trial that, in November 1986, SEH provided D.C. General with a face sheet listing brother Julian Mackey (appellant's father) and nephew Robert Mackey (appellant's brother) as Arlena Mackey's next of kin. Julian Mackey had died in 1983, a fact which

was reflected in other SEH records, but which somehow never was corrected on the face sheet. Robert Mackey's address and phone number were correct.

The evidence at trial established that once Mackey was transferred to D.C. General, it was that hospital's duty to apprise next of kin of Mackey's condition and death. Saverio Fantasia, a SEH administrator, testified that such duty was both a basic matter of hospital policy, *see* Tr. at 4A–23, and the subject of contractual agreement between SEH and D.C. General. That contract provided in pertinent part:

> 3.a. The Contractor [D.C. General] shall notify SEH and the next of kin immediately following the death of SEH patients in the contract facility. b. ... SEH will cooperate fully in notifying relatives to expedite removal of the remains as soon as possible after death.

Plaintiff's Exhibit 28, *reprinted in* S.A. 132.

Dr. Carl Green, the physician responsible for Mackey's care during her final stay at D.C. General, testified that, given Mackey's critical condition and the need to perform emergency medical procedures, extensive and continuous efforts should have been made to contact Mackey's next of kin. *See* Tr. at 3A–7, 3A–23–24. Dr. Green did not specifically remember Mackey nor any particular efforts to contact her family, but based his testimony on her medical records and on general hospital procedures. However, Mackey's medical records contained only the following notations reflecting efforts to contact a relative: (1) a note from a social service investigator on the second day of admission; (2) a second note from the social services worker dated December 4 mentioning an unspecified "plan" to try to reach relatives; (3) a resident's note reflecting calls placed to Julian and Robert Mackey; and (4) a call to SEH on December 8. Tr. at 3A–12–13, 3A–16. In response to questioning by appellant's counsel, Dr. Green conceded that, in order to protect the hospital and staff from the potential adverse legal consequences of engaging in procedures without consent, it was "very important" to document

efforts to reach a patient's family. Tr. at 3A–26.

Dr. Green also testified that there would have been "daily calls" to SEH to apprise them of Mackey's critical condition and of D.C. General's inability to contact her family. Tr. at 3A–10. Mr. Fantasia cast doubt on this assertion, however, testifying that SEH was not notified of Mackey's six life-threatening "code blue" episodes "until well after the death occurred." Tr. at 4A–29. Moreover, the sole *documented* phone call to SEH was placed at 10:00 p.m. on December 8, the eve of Mackey's death. Mackey suffered a "code blue" and was resuscitated, after which the intern noted the following on her medical records:

> Attempted to contact the family and also Saint Elizabeth's. The person who answered at Saint Elizabeth's [was] not aware of their [sic] being a patient at D.C. General by that name. Nephew's phone number in New York, no answer. Brother's number in North Carolina, wrong number.

Tr. at 3A–17–18. Dr. Green testified that, in connection with calls to SEH, it was not unusual during a late-night phone call to reach someone who was unfamiliar with the patient; Dr. Green said that if "vital information" was needed from SEH, it was understood that calls should be placed during the day. Tr. at 3A–41.

While it was undisputed that appellant's name appeared nowhere in D.C. General's records, there was clear evidence that *SEH* possessed appellant's name and correct address and telephone number, even though she was never listed on Mackey's face sheet or formally designated next of kin. Mr. Fantasia identified a number of documents from SEH's files demonstrating that SEH was aware of appellant's existence as early as 1983, including: (1) a letter to appellant from a SEH social worker, dated February 28, 1983, concerning Mackey's transfer to Georgetown University Hospital ("Georgetown") for surgery; (2) two Georgetown forms, dated March 3 and March 9, 1983, indicating that appellant had given telephonic consent to surgery for her aunt; (3) a letter to appellant, dated January 21, 1987, con-

cerning funds remaining in Mackey's account after her death; and (4) an undated correspondence list containing appellant's name, address, phone number and relationship to Mackey. Tr. at 3A–46, 4A–21–22, 4A–33–34. Appellant testified that her home address and telephone number had not changed since 1978. Finally, Jeffrey Cheng, another SEH administrator, identified a SEH Death Report, prepared on December 20, 1986, which named appellant as Mackey's "nearest surviving relative" and listed her correct address. Tr. at 19.

## II. DISCUSSION

### A. District Court's Grant of Motion for Judgment as a Matter of Law

#### 1. Standard of Review

■ In reviewing the trial court's order granting the District of Columbia's motion for judgment as a matter of law, we evaluate *de novo* whether appellant proffered "*sufficient evidence* upon which a jury could properly base a verdict" in her favor. *Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 828 (D.C.Cir.1988) (emphasis in original), *cert. denied,* 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989). In so doing, we view the evidence in the light most favorable to appellant, resolving any conflicts in her favor. *Grogan v. General Maintenance Serv. Co.,* 763 F.2d 444, 447 (D.C.Cir.1985). However, we cannot substitute our judgment for that of the jury; therefore, we neither assess witness credibility nor weigh the evidence. *Richardson,* 857 F.2d at 827; *Coburn v. Pan Am. World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). In short, "[t]he jury's verdict must stand unless the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." *McNeal v. Hi–Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 640–41 (D.C.Cir.1988) (quoting *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.1984)) (internal quotations omitted).

## 2. *The Merits*

■ On the record before us, we think it clear that appellant was Mackey's legal next of kin. As such, she had an actionable right to possession of Mackey's body. In *Steagall v. Doctors Hospital, Inc.,* 171 F.2d 352 (D.C.Cir.1948), this court announced:

> The controlling principle is that there exists in our law a right to possess, preserve and bury, or otherwise to dispose of, a dead body; that the right belongs to the surviving spouse, if any ... and, if none such, then to the next of kin in the order of their relation to the decedent; and that violation of that right is a tort.

*Id.* at 353.[2] D.C. General's failure to timely notify appellant of her aunt's death entitles appellant, under *Steagall,* to bring the instant claim for negligent interference with her right to possession of Mackey's body.

■ Viewing the evidence in the light most favorable to appellant, there can be little doubt that a reasonable juror could have concluded that D.C. General did not exercise reasonable efforts to contact Mackey's next of kin. *See Morrison v. MacNamara,* 407 A.2d 555, 560 (D.C.1979) (D.C. negligence law "generally does not acknowledge differing standards or categories of care," but uniformly requires conduct which is reasonable under the circumstances). Although the jury heard substantial testimony from Dr. Green about the efforts that "must have been" made to locate Mackey's family, Dr. Green could not personally recall such efforts and D.C. General's records do not support this assertion. Furthermore, there was only *one* documented call to SEH, even though Dr. Green testified that there must have been *daily* contact with SEH and conceded that D.C. General had legal incentives to document its efforts to locate family members. Moreover, Mr. Fantasia of SEH contradicted Dr. Green, testifying that SEH was not notified of Mackey's "code blues" until well after her death.

In our view, the reasonableness of D.C. General's efforts in this case reduces to its contacts (or lack thereof) with SEH. As a matter of common sense, a reasonable juror could conclude that SEH, Mackey's caretaker of 22 years, was the primary source of information about next of kin to which D.C. General should have turned. Yet, D.C. General's records document only one telephone call to SEH, placed the night before Mackey's death—a call in which an unidentified person at SEH disclaimed any knowledge whatsoever of Arlena Mackey. Because this person clearly was uninformed and because D.C. General neither obtained the information it sought about Mackey nor relayed her dire condition in this phone call, a reasonable juror easily could have concluded that D.C. General should have made a follow-up call to SEH the next day. Dr. Green himself conceded that if D.C. General wanted to convey any "vital information" about a patient, calls to SEH were best placed during daytime hours.

In granting appellee's motion for judgment as a matter of law, the District Court exonerated D.C. General on the grounds that it was "completely dependent" on SEH for information about Mackey and that SEH negligently provided D.C. General with information that D.C. General "had no way of knowing ... was inaccurate." April 23, 1992 *Mem.* at 2–3, *reprinted in* App. 31–32. We believe a reasonable juror could have reached an entirely different conclusion from the evidence. First, the intern's December 8 file note reveals that D.C. General *did* know that Julian Mackey's phone number, as provided by SEH, was inaccurate. Second, D.C. General's "dependence" on SEH counsels that, if anything, D.C. General should have made concerted, aggressive efforts to learn more *from SEH* when the contacts on the face sheet led nowhere after 11 days of supposedly continued calling.

A reasonable juror could have concluded that, had D.C. General called SEH on De-

---

**2.** Citing *District of Columbia v. Smith,* 436 A.2d 1294 (D.C.1981), appellee argues that the D.C. Court of Appeals has repudiated the cause of action recognized in *Steagall.* In *Smith,* however, the court held that the alleged negligence had taken place while the decedent was still alive and

that the case therefore should not have been submitted to the jury on a claim of negligent interference with the right to possession of a dead body. *Id.* at 1298–99. Therefore, *Smith* cannot be read to overturn *Steagall.*

cember 9 and informed them of Mackey's death, SEH would have located appellant's name in its files. The evidence showed that, on that date, appellant's name appeared in at least four places in SEH's files. The evidence also indicated that SEH had no trouble finding appellant's name when it was needed; *e.g.*, appellant was listed on the Death Report prepared on December 20, 1986, and on the account closing letter dated January 21, 1987. Furthermore, while the evidence suggests that SEH was negligent in preparing the face sheet, it does not suggest SEH was uncooperative or that it would not, upon learning of Mackey's death, have fulfilled its contractual obligation to assist D.C. General in locating next of kin. Thus, a juror could conclude that it was patently unreasonable for D.C. General not to have turned to SEH when Mackey, a 22–year resident of that institution, fell critically ill and died and no family member had been contacted.

In short, there is no basis upon which this case could have been taken from the jury on a motion for judgment as a matter of law. The evidence was not so "one-sided" that reasonable jurors could not disagree on a verdict in favor of D.C. General. The judgment of the District Court on this point was in error and must therefore be reversed.

B. *Presumption of Damages for Negligent Infliction of Emotional Distress*

■ The District Court found SEH negligent in failing to notify appellant of her aunt's death, and awarded a $10,000 judgment against the United States. The court determined, however, that appellant had not substantiated her claim of emotional distress and therefore refused to award additional damages for negligent infliction of emotional distress. *See* February 10, 1992 *Mem.* at 7, *reprinted in* App. 25. Although appellant concedes, as she must, that neither we nor the D.C. Court of Appeals has ever held that plaintiffs are entitled to a *presumption* of damages for mental anguish wrought by the negligent mishandling of a corpse, *see* Brief of Appellant at 26, she urges us to hold that such a presumption is justified. We refuse to do so.

The District of Columbia's recovery rule for negligently inflicted emotional distress is as clear as it is stringent, and it does not afford appellant the relief she seeks. To be compensable, emotional distress must "result[ ] from a direct physical injury." *District of Columbia v. McNeill*, 613 A.2d 940, 943 (D.C.1992); *see also Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C.1980) (same). The D.C. Court of Appeals has carved out one precisely defined exception to this rule: A plaintiff present in the zone of physical danger created by a defendant's negligence, who was made thereby to fear for her own safety, may recover for negligent infliction of "serious" emotional distress even though the defendant's actions created no direct physical impact upon the plaintiff. *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C.1990) (*en banc*); *see also Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C.1991) (plaintiff in the zone of danger who suffers "serious and verifiable" emotional distress even without resultant physical injury also entitled to damages).

The *Williams* exception plainly does not avail appellant, for the "zone of danger" construct is meaningless on the facts of this case. SEH's negligent failure to timely notify appellant of her aunt's death or to preserve Mackey's body for appellant to dispose of as she wished did not endanger anyone's physical well-being. In other words, the hospital's conduct did not cause appellant to fear for her own safety, as the rule requires. *Cf. Cauman v. George Washington Univ.*, 630 A.2d 1104 (D.C.1993) (physicians' alleged failure to detect genetic abnormalities in appellants' unborn child created no zone of danger as to appellants).

Moreover, the D.C. Court of Appeals has decisively expressed its hostility to broadening the scope of the *Williams* rule. In *Cauman, supra,* the court rejected a similar plea that *Williams* be extended to cover appellants' claim for wrongful birth. There, the court reiterated that strong public policy considerations counsel against imposing "virtually infinite liability" for negligent conduct, and declared that further changes in the law were better left to legislative action. *Cauman,* at 1107. *Cauman* indisputably fore-

closes appellant's claim for additional damages.

### III. CONCLUSION

Viewing the evidence in the light most favorable to appellant, we conclude that a reasonable juror could have found D.C. General negligent in failing to notify appellant of her aunt's death. We therefore reverse the District Court's grant of judgment as a matter of law for the District of Columbia and reinstate the jury's verdict. Because D.C. law does not provide for a presumption of damages for negligently inflicted emotional distress unless the claimant was in a zone of physical danger, we affirm the District Court's refusal to award appellant such damages against the United States.

*So ordered.*