**Frederic W. SCHWARTZ,
Jr., et al., Appellants,**

v.

**FRANKLIN NATIONAL BANK, Appellee.**

No. 94–CV–636.

District of Columbia Court of Appeals.

Argued April 7, 1998.

Decided Oct. 1, 1998.

Frederic W. Schwartz, Jr., for appellants.

Geoffrey P. Gitner, with whom M. Roy Goldberg, Washington, DC, was on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and REID, Associate Judges.

REID, Associate Judge:

This case concerns sanctions imposed under Super. Ct. Civ. R. 11 after acrimonious litigation between appellants Julianne and Richard Meadows, and appellee Franklin National Bank ("the bank"). The parties settled their dispute, except for their respective motions for sanctions. After settlement, the trial court denied Mr. and Mrs. Meadows' motion for sanctions, but granted the bank's motion as to three of Mrs. Meadows' twenty counterclaims and imposed sanctions on her and her counsel. The bank was awarded $533.60 in attorneys' fees and $42.00 in costs. The Meadows and their counsel filed a timely appeal. We reverse in part and affirm in part.

## FACTUAL SUMMARY

Mrs. Meadows was hired by the bank on August 13, 1990, as a marketing representative, at a monthly salary of $5,416.00. She was terminated on February 8, 1991. One month later, the bank sued Mrs. Meadows, alleging, *inter alia,* that she: (1) used the American Express card, issued by the bank for business purposes only, for unauthorized personal expenses; (2) engaged in a check kiting scheme by writing checks on her personal Franklin National Bank account covered by her Perpetual Bank account when there were insufficient funds in her Perpetual account; and (3) obtained an advance to cover personal medical expenses covered by her health insurance, but failed to repay the advance to the bank. In its complaint against Mrs. Meadows, the bank claimed breach of fiduciary duty; theft, embezzlement, false pretenses; recovery of compensation; breach of contract; and fraud.

On August 7, 1991, Mrs. Meadows filed an answer to the bank's complaint, and counterclaimed against the bank and two of its officers. Three of her twenty counterclaims were for negligent infliction of emotional distress (counterclaim fifteen); prima facie tort—intentional harm to a property interest (counterclaim seventeen); and intentional causing of liability (counterclaim eighteen). The bank filed a third amended complaint on April 7, 1992 in which it added Mrs. Meadows' husband as a defendant, and included a claim for civil conspiracy. The bank's theory was that Mr. Meadows aided and abetted his wife.

The demand for sanctions was hard fought. In an initial order, docketed on February 14, 1994, the trial court granted the bank's motion for sanctions as to counterclaims fifteen, seventeen and eighteen, but denied sanctions based on the other counterclaims. In addition, the court denied Mr. and Mrs. Meadows' motion for sanctions. After reconsidering its order of February 14, the trial court issued a second order, docketed on April 22, 1994. In essence, the April 22 order reiterated the court's previous findings and conclusions regarding the motions of Mrs. Meadows and the bank for sanctions, denied Mr. Meadows' motion for sanctions, and assessed Mrs. Meadows and her counsel $533.60 in attorneys' fees and $42.00 in costs for the filing of counterclaims fifteen, seventeen and eighteen without reasonable prefiling inquiry.

## ANALYSIS

Mrs. Meadows and her counsel contend that counterclaims seventeen and eighteen were not sanctionable because they were "extracted from the Restatement (Second) of Torts," and counterclaim fifteen was not

sanctionable because it "explor[ed] the penumbra of *Williams v. Baker*," 572 A.2d 1062 (D.C.1990) (en banc). Further, they argue, the trial court erred in not imposing sanctions against the bank for its check kiting claim against Mrs. Meadows. Mr. Meadows maintains he was entitled to sanctions as to the civil conspiracy count against him.

▬ Under the version of Super. Ct. Civ. R. 11 in effect at the time the bank's complaint and Mrs. Meadows' counterclaim were filed, we must determine whether the complaint and counterclaim were "well-grounded in fact, ... warranted by existing law, or [whether there is] a good faith argument for the extension, modification, or reversal of existing law...."[1] We have held previously:

> [T]hat the trial court's decision on whether a violation of the factual inquiry or improper purpose prongs of Rule 11 has occurred is subject to review for abuse of discretion, but a decision on whether a paper was supported by law or a good-faith argument for change in the law is subject to *de novo* review because the issue is strictly one of law.

*Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1029 (D.C.1989) (citing *Westmoreland v. CBS, Inc.*, 248 U.S.App. D.C. 255, 261–62, 770 F.2d 1168, 1174–75 (1985)); *see also Esteves v. Esteves*, 680 A.2d 398, 406 (D.C.1996). Our "proper focus ... is the conduct of the parties at the time the pleading was submitted rather than the actions before or during trial." *Kleiman v. Kleiman*, 633 A.2d 1378, 1382 (D.C.1993). Moreover, "the court [is required] to balance the potential 'chill' on innovative theories of law against the need to discourage frivolous or dilatory litigation...." *Cooper v. AFSCME, Local 1033*, 656 A.2d 1141, 1145 (D.C.1995) (quoting *Williams v. Mount Jezreel Baptist Church*, 589 A.2d 901, 911 (D.C.1991)). Thus, "[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Gray v. Washington*, 612 A.2d 839, 842 (D.C.1992) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986) (internal quotations omitted)). With these principles in mind, we turn now to the counterclaims for which sanctions were imposed.

*Counterclaim Fifteen: Negligent Infliction of Emotional Distress*

The trial court determined that counterclaim fifteen "was not warranted by existing law at the time it was filed." When Mrs. Meadows filed her counterclaim, the controlling precedent on negligent infliction of emotional distress was *Williams v. Baker*, 572 A.2d 1062 (D.C.1990) (en banc). There, "[w]e h[e]ld that one may recover for emotional distress caused by witnessing injury to an immediate family member only if the claimant was in the zone of physical danger and as a result feared for his or her own safety." *Id.* at 1064 (footnote omitted). However, we also made clear that:

> This appeal does not present the issue, and accordingly we take no position here on whether mental distress, to be compensable, must result in physical injury, but we share the view of the New York Court of Appeals that in furtherance of the policy of excluding recovery for trifling distress, the claimed distress must be serious and verifiable.

*Id.* at 1068 (internal quotations and citation omitted).

While Mrs. Meadows' counterclaim was pending, this court decided *Cauman v. George Washington Univ.*, 630 A.2d 1104 (D.C.1993), a case also handled by Mrs. Meadows' counsel. We applied *Williams, supra,* in *Cauman* and said: "[T]he plaintiff must be 'physically endangered as a result of the defendant's alleged negligence' in order to recover." *Id.* at 1106 (quoting *Williams, supra,* 572 A.2d at 1073). In *Williams,* "'the plaintiff mother was not physically endangered as a result of the defendant's alleged negligence' in failing to diagnose properly her son's medical condition, and therefore ... she could not recover on a theory of negligent infliction of emotional distress." *Id.* at 1107 (quoting *Williams, supra,* 572 A.2d at 1073). In deciding *Cauman,* we recognized that "appellants [were] asking us to

---

1.  Rule 11 was amended in 1995.

broaden the reach of *Williams.*" *Id.* at 1107. However, we declined to do so.

Mrs. Meadows and her counsel argued that the trial court relied on *Cauman* in imposing sanctions even though that case had not been decided at the time the counterclaim was filed. However, the trial court declared that its February 14 order was based on *Williams,* not *Cauman.* Under *Williams,* said the trial court, there were no facts in this case showing "[Mrs. Meadows] was (1) physically injured or (2) that [the bank's] negligent conduct caused her to fear for her safety and that she was within the zone of physical danger." Moreover, Mrs. Meadows and her counsel "made no argument for an *extension or modification of the law.*" (emphasis supplied).

We review counterclaim fifteen at the time it was filed. *Williams* did not decide the issue as to whether to be compensable, emotional distress must result from physical injury. However, we leaned toward the requirement imposed by the New York Court of Appeals, that "the claimed distress [had to] be serious and verifiable." *Williams, supra,* 572 A.2d at 1068 (internal quotations and citation omitted). Thus, when Mrs. Meadows filed her counterclaim fifteen, we did not require an actual physical injury. Nor had we decided issues concerning non-spectator plaintiffs. We did say that the claimant had to be in the zone of physical danger, but not until *Cauman,* where we acknowledged Cauman's attempt to broaden the reach of *Williams,* did we explicitly state that the claimant had to be "physically endangered as a result of defendant's negligence."

▮ Although the record on appeal in this case does not reflect an express argument by Mrs. Meadows and her counsel for an extension or modification of *Williams,* nonetheless that argument may be inferred from the record before us. For this reason, we conclude that sanctions were not permissibly imposed for counterclaim fifteen, because the filing of the counterclaim was warranted by a good faith argument for the modification or extension of *Williams.*

**2.** Prior to settlement by the parties in this case, another trial judge dismissed counterclaims sev-

*Counterclaims Seventeen and Eighteen: Prima Facie Tort and Intentional Causing of Liability*

With regard to counterclaims seventeen and eighteen, prima facie tort and intentional causing of liability, the trial court stated "that these claims were clearly not warranted by *existing law* and there was no good faith argument for an extension of law or, as Mrs. Meadows claims in her Reply, 'adoption' of provisions of the Restatement (Second) of Torts." (emphasis supplied). According to the court, "the pleadings ... [were] devoid of any argument on behalf of Mrs. Meadows for an extension of the law regarding counts Seventeen and Eighteen[,]" no legal support existed in the District for such counterclaims, and no case law from other jurisdictions was cited.

Mrs. Meadows and her counsel apparently based counterclaims seventeen and eighteen on §§ 870 (liability for intended consequences), 871 (intentional harm to a property interest) and 871A (intentionally causing liability) of the RESTATEMENT (SECOND) OF TORTS. However, the trial court found their reliance on the Restatement to be insufficient to withstand a Rule 11 motion. Rather, Mrs. Meadows and her counsel had to show either "legal support for such claim in the District of Columbia, [or] ... provide case law from other jurisdictions in support of these claims." In particular, the trial court faulted Mrs. Meadows and her counsel for their "one paragraph response [to the bank's motion to dismiss], including the applicable section of the Restatement and a conclusory statement indicating that the elements had been established."[2]

▮ We conclude that where there is no existing law in this jurisdiction, reliance on the Restatement, by itself, is sufficient to withstand the imposition of Rule 11 sanctions. The Restatement is a recognized source of causes of action. As Professors Prosser and Keeton have noted:

enteen and eighteen.

Some of the most eminent legal scholars have taken part in [the] work [of the Restatement of the Law of Torts], with the assistance of numerous judges and lawyers.

. . . .

... [I]t unquestionably represents the most complete and thorough consideration which tort law has received.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 3, at 17 (5th ed.1984). Here, the trial court imposed sanctions in part because "these claims were not warranted by *existing law* and there was no good faith argument for an extension of law or ... 'adoption' of provisions of the Restatement (Second) of Torts." However, in *Holmes v. Amerex Rent–A–Car, et al.,* 710 A.2d 846, 849 (D.C.1998), we recently said: "A plaintiff [or counterplaintiff] advancing a novel claim in this jurisdiction therefore will not necessarily be precluded from recovering." In *Holmes,* we referenced PROSSER AND KEETON, *supra,* in recognizing "an independent action for negligent or reckless spoliation of evidence." *Id.* at 848–49. Similarly, in this case, we decline to uphold sanctions for the filing of counterclaims based upon sections of the Restatement where there is no case law in this jurisdiction regarding such counterclaims.[3] As we said in *District of Columbia v. Fraternal Order of Police,* 691 A.2d 115 (D.C.1997): Rule 11 "makes sanctionable the filing of pleadings which are 'legally unreasonable.'" *Id.* at 119 (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1538 (9th Cir.1986)). One test of legal unreasonableness is whether "[a] legal position ... ignores relevant controlling authority." *Id.* Moreover, "[i]t is fairly arguable that [where] there is no settled law on the precise question raised, ... any claim that sanctions are warranted [may be undercut]." *Id.* at 120 (referencing *Black Hills Inst. v. South Dakota Sch. of Mines & Tech.,* 12 F.3d 737, 745 (8th Cir.1993), *cert. denied,* 513 U.S. 810, 115 S.Ct. 61, 130 L.Ed.2d 18 (1994)). The bank's claim for sanctions here is unwarranted.

Furthermore, the fact that Mrs. Meadows responded to the bank's motion to dismiss with one paragraph containing a reference to the Restatement and a conclusory statement, is not dispositive on the issue of sanctions because the focus in Rule 11 sanctions' cases is whether there was a reasonable prefiling inquiry. Prior to filing, it was not "patently clear that [counterclaims seventeen and eighteen had] absolutely no chance of success." *Gray, supra,* 612 A.2d at 842. Consequently, the trial court erred in imposing sanctions on Mrs. Meadows and her counsel for the filing of these counterclaims.

*The Civil Conspiracy and Check Kiting Allegations of the Bank*

Mr. and Mrs. Meadows argue that the trial court abused its discretion in denying their motion for sanctions against the bank for the filing of a civil conspiracy claim against Mr. Meadows and the check kiting allegations against Mrs. Meadows. After reviewing the check kiting issue from a factual perspective, the trial court concluded: "[T]hat the evidence is in equipoise on this issue," and thus, imposition of sanctions was not warranted. With regard to the civil conspiracy count, the trial court stated: "Considering the information available to the parties at the time of the civil conspiracy filing, ... Rule 11 sanctions are not warranted."

We review this matter for abuse of discretion. Our review of the record on appeal reveals that: "[T]he [trial] judge exercised h[er] discretion judiciously." *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 204 n. 17 (D.C.1991). We conclude that the trial court did not abuse its discretion in denying Mr. and Mrs. Meadows' motion for sanctions against the bank for the filing of the civil conspiracy and check kiting allegations.

Accordingly, for the foregoing reasons, we reverse the award of sanctions against Mrs. Meadows and her counsel, and affirm the denial of sanctions against the bank.

---

**3.** Superior Court rules "do not require a plaintiff to bolster a complaint with a memorandum of points and authorities." *Green v. Louis Fireison & Associates,* 618 A.2d 185, 190 (D.C.1992).