**Michael ROSSI, an infant by his guardian ad litem, Eileen ROSSI; Eileen Rossi and Frank Rossi, individually, Plaintiffs,**

v.

**SOMERSET OB–GYN ASSOCIATES, Defendant.**

Civ. No. 91–4347.

United States District Court,
D. New Jersey.

June 1, 1994.

Arthur L. Shanker, Weiner & Shanker, Atlantic City, NJ, for plaintiffs.

Karen M. Lerner, McDonough, Korn & Eichhorn, P.C., Springfield, NJ, for defendant.

---

## OPINION

CHESLER, United States Magistrate Judge.[1]

### I. *Introduction*

On September 30, 1991, suit was filed by plaintiffs Eileen Rossi and Frank Rossi as individuals, and by Eileen Rossi as guardian ad litem for her minor son, Michael Rossi, asserting claims for "wrongful life" and "wrongful birth" against defendants Somerset Ob–Gyn Associates and Harvey A. Kasper, M.D.[2] The complaint alleges that defendants were negligent in treating Eileen Rossi during the pregnancy, by failing to determine through a sonogram and other tests that Michael had severe congenital birth defects. The complaint further alleges that, as a result of defendants' negligence, plaintiffs Eileen Rossi and Frank Rossi "did not have the choice of terminating the pregnancy, and the infant and incompetent plaintiff, Michael Rossi, was born with multiple birth defects...." Complaint ¶ 9. Michael Rossi's claim for "wrongful life," set forth in count one, sought damages for the extraordinary medical expenses he will incur through his life. His parents' claim for "wrongful birth," set forth in count two, also sought reimbursement for Michael's medical expenses, as well as general damages for anguish and emotional distress.

Following the close of discovery, defendants moved for summary judgment on both claims. The summary judgment motion directed against the parents' "wrongful birth" claims was based upon statute of limitations grounds and was granted on May 7, 1993. *Rossi v. Somerset Ob–Gyn*, Civ. No. 91–4347 (D.N.J. filed May 7, 1993).

Defendants based their application for summary judgment on the infant plaintiff's claim upon their contention that New Jersey law required proof of proximate causation before a plaintiff could recover on a "wrongful life" claim. Thus, defendants argued, before the infant plaintiff could recover damages for "wrongful life," he first had to establish that his parents would have chosen to have an abortion if they had been aware of his condition. Defendants further contended that the record proofs failed to meet plaintiffs' burden on this issue. The court was not persuaded by defendants' arguments that New Jersey law had such a proximate cause requirement, and therefore denied summary judgment on the infant plaintiff's claim.

The case was ultimately set for trial on May 20, 1994. In advance of trial, counsel for defendants submitted a trial brief which renewed defendants' argument that the infant plaintiff could not prevail on a "wrongful life" claim under New Jersey law, unless he established that his parents would have opted for an abortion if defendants' malpractice had not deprived them of that option. Following jury selection on May 20, 1994, the court heard further argument on this issue. The court was persuaded that its initial view of New Jersey law was incorrect, and that defendants' position was correct. The court advised the parties of its determination so that they could proceed accordingly.

The trial resumed on May 23, 1994. At that time, counsel for plaintiffs indicated that the trial testimony of Mrs. Rossi would remain as set forth in her pre-trial deposition— *i.e.,* that Mrs. Rossi would not affirmatively indicate that she would have undergone an abortion if she had been advised of her infant's birth defects. Plaintiffs' counsel further indicated that neither parent would testify at trial that the infant would have been aborted if they had been aware of his condition. Plaintiffs' counsel requested the opportunity to reargue the issue and indicated that, if the court was not inclined to reverse itself, plaintiffs wanted a "mistrial," to provide them the right to appeal the court's legal determination. Following further legal argument, the court adhered to its determination on the issue of proximate cause. Based upon plaintiffs' counsel's representations that neither parent would testify that the infant would have been aborted if the

---

corporate successor liability under one of the four exceptions to the general rule.

1. In accordance with the provisions of 28 U.S.C. § 636(c), the parties consented to have this action heard by the undersigned, and all proceedings with regard to this action were referred to the undersigned for disposition.

2. Plaintiffs voluntarily dismissed defendant Harvey A. Kasper, M.D., from this action by a stipulation filed on November 20, 1992.

parents had known of his condition, the court concluded that the infant plaintiff could not sustain a prima facie case for "wrongful life." The court indicated that it would therefore grant judgment in favor of defendants, under Federal Rule of Civil Procedure 50(a), with the reasons for its decisions set forth in a written opinion.

## II. *Discussion*

### A. *Wrongful Life and Wrongful Birth Causes of Action*

■ The New Jersey courts recognize two separate causes of action that may arise from the negligent failure of a medical professional to diagnose the existence of birth defects during pregnancy. The first cause of action, "wrongful birth," applies to the "cause of action of parents who claim that the negligent advice or treatment deprived them of the choice of avoiding conception or ... of terminating the pregnancy." *Procanik by Procanik v. Cillo,* 97 N.J. 339, 348, 478 A.2d 755 (1984). The New Jersey Supreme Court first recognized this cause of action in *Berman v. Allan,* 80 N.J. 421, 404 A.2d 8 (1979). In *Berman,* the court permitted a parent to recover damages for the emotional distress and anguish caused by defendants' conduct, which "directly deprived her and, derivatively, her husband of the option to accept or reject a parental relationship with the child and thus caused them to experience mental and emotional anguish upon their realization that they had given birth to a child afflicted with Down's Syndrome." *Id.* at 433, 404 A.2d 8. The *Berman* court refused, however, to permit the parents to recover any damages for extraordinary medical expenses incurred in raising the child. *Id.* at 432, 404 A.2d 8. The court also refused to recognize a cause of action on behalf of the child, concluding that it "has not suffered any damage cognizable at law by being brought into existence." *Id.* at 429–30, 404 A.2d 8.

In *Schroeder v. Perkel,* 87 N.J. 53, 432 A.2d 834 (1981), the New Jersey Supreme Court liberalized the recovery permitted in a "wrongful birth" suit, by authorizing the parents to recover the extraordinary medical expenses incurred in raising their child. *Id.* at 69–71, 432 A.2d 834. However, the court again refused to recognize a cause of action on behalf of the child. *Id.* at 65–66, 432 A.2d 834.

In *Schroeder,* the court emphasized:

Parents have a right of their own either to accept or reject a parental relationship, and the deprivation of that right by negligent misconduct of another, creates a cause of action in the parents. In *Berman,* the parents were deprived of the choice whether to bear the emotional burden of an afflicted child. In the present case, Mr. and Mrs. Schroeder were deprived of the choice whether to conceive a second child whose birth would impose extensive medical expenses on them.

*Id.* at 66, 432 A.2d 834. Thus, both the *Berman* and *Schroeder* opinions focused the parents' claims upon a deprivation of the parents' right to choose whether or not to terminate a pregnancy.

In *Procanik,* the New Jersey Supreme Court finally recognized a cause of action, on behalf of the child, for "wrongful life." When this court heard the summary judgment motion in the instant matter, plaintiff contended that, as in *Berman* and *Schroeder,* the gravamen of the cause of action created in *Procanik* is the parents' loss of the right to choose whether or not to terminate a pregnancy. Thus, plaintiff argued that, to establish his claim, he was not required to establish that he would not have been born but for the defendants' negligence. Plaintiff relied on language in a post-*Procanik* case, *Hummel v. Reiss,* 129 N.J. 118, 608 A.2d 1341 (1992), to support this argument. The *Hummel* court characterized the holding in *Procanik* in the following language: "In ... *Procanik v. Cillo, supra,* 97 N.J. 339, 478 A.2d 755, we recognized the child's cause of action for wrongful life, and held that a child may recover the lifetime extraordinary expenses resulting from a misdiagnosis that deprived its parents of the choice of terminating the pregnancy." *Id.,* 129 N.J. at 124, 608 A.2d 1341. The *Hummel* court also stated:

The breaches of duty in *Procanik, Berman* and *Schroeder* all revolve, at least in part, around the defendant-doctor's failure to diagnose a condition that might have caused the parents to terminate the preg-

nancy had they been informed of that condition. The wrongful-life and -birth causes of action are, therefore, dependent on a woman's right to terminate a pregnancy for reasons other than the mother's health. *Id.* at 126, 608 A.2d 1341.

Based upon the above language, this court concluded that the New Jersey Supreme Court would not require a plaintiff pursuing a "wrongful life" claim to establish that, but for defendants' negligence, he would not have been born, and that the crux of the claim was instead based solely upon the deprivation of the parents' right to choose whether to abort the pregnancy.

Upon reconsideration and for the reasons set forth below, I am satisfied that my initial decision did not accurately predict the way the New Jersey Supreme Court would rule on this issue.

Initially, it must be noted that the *Procanik* court carefully distinguished the "wrongful life" cause of action from the "wrongful birth" cause of action recognized in *Schroeder* and *Berman.* The court said:

> In the present context, "wrongful life" refers to a cause of action brought by or on behalf of a defective child who claims that, but for the defendant doctor's negligent advice to or treatment of its parents, the child would not have been born. "Wrongful birth" applies to the cause of action of parents who claim that the negligent advice or treatment deprived them of the choice of avoiding conception or, as here, of terminating the pregnancy.

*Procanik,* 97 N.J. at 348, 478 A.2d 755.

Thus, in recognizing a "wrongful birth" claim, the New Jersey Supreme Court specifically focused on the requirement that, "but for the ... doctors' negligent advice or treatment ... the child would not have been born." *Id.*

This requirement is highlighted by other language in the *Procanik* opinion. The court noted that "[t]he essence of the infant's claim is that the defendant doctors wrongfully deprived his mother of information that would have prevented his birth." *Id.* Indeed, the court indicated that, in the past, this very requirement was a major impediment to the

Court in recognizing a cause of action for "wrongful life." The court recounted:

> Notwithstanding recognition of the existence of a duty and its breach, policy considerations have led this Court in the past to decline to recognize any cause of action in an infant for his wrongful life. The threshold problem has been the assertion by infant plaintiffs not that they should not have been born without defects, but that they should not have been born at all. *Gleitman v. Cosgrove, supra,* 49 N.J. [22] at 28 [227 A.2d 689 (1967) ]. The essence of the infant's cause of action is that its very life is wrongful. *Berman v. Allan, supra,* 80 N.J. at 427 [404 A.2d 8]. Resting on the belief that life, no matter how burdened, is preferable to non-existence, the *Berman* Court stated that the infant "has not suffered any damage cognizable at law by being brought into existence." *Id.* at 429, 404 A.2d 8.

*Procanik,* 97 N.J. at 349, 478 A.2d 755.

My conclusion that the New Jersey Supreme Court would require plaintiff to establish that, but for the negligence of defendant, he would not have been born, is further bolstered by the out-of-state cases upon which the *Procanik* Court relied in recognizing a cause of action for "wrongful life." *See Turpin v. Sortini,* 31 Cal.3d 220, 182 Cal. Rptr. 337, 643 P.2d 954 (1982); *Harbeson v. Parke–Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483 (1983).

In *Turpin,* the complaint specifically pled that the infant would not have been conceived if the infant's parents had been given proper medical advice. *Id.,* 182 Cal.Rptr. at 339, 643 P.2d at 956. The *Turpin* court, in recognizing the cause of action, indicated:

> [T]he injury which plaintiff has suffered is that, as a result of defendants' negligence, she has been born with a hereditary ailment rather than not being born at all. Although plaintiff has not phrased her claim for general damages in these terms, most courts and commentators have recognized that the basic claim of "injury" in wrongful life cases is "[i]n essence ... that [defendants], through their negligence, [have] forced upon [the child] the worse of

... two alternatives[,] ... that nonexistence—never being born—would have been preferable to existence in [the] diseased state."

*Turpin,* 182 Cal.Rptr. at 344, 643 P.2d at 961 (citations omitted).

In likewise recognizing a "wrongful life" cause of action, the *Harbeson* Court noted:

The causation issue in a wrongful life claim is whether "[b]ut for the physician's negligence, the parents would have avoided conception, or aborted the pregnancy, and the child would not have existed." Comments, 54 Tul.L.Rev. at 491.... It is clear in the case before us that, were it not for the negligence of the physicians, the minor plaintiffs would not have been born, and would consequently not have suffered fetal hydantoin syndrome. More particularly, the plaintiffs would not have incurred the extraordinary expenses resulting from that condition. There appears to be no reason a finder of fact could not find that the physicians' negligence was a proximate cause of the plaintiffs' injuries.

*Harbeson,* 656 P.2d at 497 (citation omitted).

Thus, the out-of-state cases upon which the New Jersey Supreme Court relied in creating a "wrongful life" cause of action clearly require plaintiff to establish that, apart from defendant's negligence, he would not have been born. Because the New Jersey Supreme Court chose to follow the lead of the *Turpin* and *Harbeson* courts in recognizing this cause of action, there is every reason to believe that New Jersey also adopted their causation requirement.

In sum, this court concludes that it erred in its previous determination that the language in *Hummel,* which is at best *obiter dicter,* was intended to reflect a change in the New Jersey Supreme Court's view of the causation element required to establish a wrongful life claim under *Procanik.* Upon reflection, it is clear that the New Jersey Supreme Court would never have signalled an intention to make such a radical change in its approach to this cause of action, through the use of off-hand comments contained in a decision which did not really deal with the issue at all. While the New Jersey Supreme Court may in the future decide, for policy or other reasons, to modify the causation element established in *Procanik,* I am satisfied that the *Hummel* decision did not effect such a change.

**B.** *Federal Rule of Civil Procedure 50*

■ Having concluded that plaintiff Michael Rossi, to sustain a cause of action, must establish that his mother would have chosen to abort the pregnancy had she been informed of his defects, this court must next determine whether it is possible for plaintiff to meet this burden.

Federal Rule of Civil Procedure 50(a)(1) provides as follows:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Thus the issue is whether, given plaintiff's stipulation, there would be any way for a reasonable jury to find in favor of plaintiff on this issue. Prior to trial, Mrs. Rossi gave the following deposition testimony on the issue:

Q. This lawsuit is about a claim that the doctors failed to detect these abnormalities when Michael was in your uterus. Is it your contention that had you known of these abnormalities that you would have aborted Michael?

A. It's my contention that I was never given the choice.

Q. So what would the answer to my question be?

A. I just gave you the answer. I wasn't given a choice.

Q. But I'm asking you know, hypothetically, had you known of the types of disabilities that Michael would be born with, if he were allowed to grow in your uterus, *are you saying now that you would have aborted him had you been given the choice?*

A. *No, I'm not saying that.* I'm saying I wasn't given the choice.

Deposition of Eileen Rossi, August 18, 1992, at 47–21 to 48–18 (emphasis added).

Counsel for plaintiff Eileen Rossi has stipulated that, at trial, her answers would be the same and she would not testify that she would have undergone an abortion if she had known of the child's disabilities. Similarly, counsel for plaintiff has stipulated that Mr. Rossi would not testify that he would have wanted an abortion if he had known of Michael's condition.

Under these circumstances, I must conclude that plaintiff Michael Rossi would be unable to satisfy his burden of proof on the issue of causation. The court recognizes that deposition testimony indicates that both parents are "pro-choice" and that Mrs. Rossi had previously undergone abortions. *See, e.g., id.* at 48–19 to 49–14. The issue that a trier of fact would have to determine, however, would be whether, in *this* situation, Mrs. Rossi would have undergone an abortion had she been advised of the infant's prenatal condition. Under circumstances in which the parents are available to testify on the issue, and nevertheless will not indicate that they would have chosen to abort the fetus if they had been aware of its abnormalities, I must conclude that a reasonable trier of fact would be unable to conclude, by a preponderance of the evidence, that the parents would have chosen this option. Therefore, plaintiff Michael Rossi is unable to meet his burden of proof on this critical issue.

### III. *Conclusion*

For the foregoing reasons, judgment for defendant under Federal Rule of Civil Procedure 50 will be entered.