AMY S. VICCARO & another[1] vs. AUBREY MILUNSKY.

Suffolk. September 13, 1989. - March 1, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Negligence*, Causing birth of child, Doctor, Medical malpractice. *Damages*, Birth of child, Child-rearing expenses, Future damages. *Public Policy*.

On a claim by the parents of a child born with a genetic defect, against a physician specializing in genetics whose allegedly negligent preconception counseling led the parents to decide to conceive children, the parents would be entitled to recover their extraordinary medical and educational expenses and other extraordinary costs associated with caring for the child, together with damages for the parents' emotional distress and any physical harm caused by that emotional distress, offset by any emotional benefits the parents may receive from the existence of this child and an older child born without defect. [779-782, 782-783] O'CONNOR J., with whom NOLAN and LYNCH, JJ., joined, dissenting.

On a claim by the parents of a child born with a genetic defect, against a physician specializing in genetics whose allegedly negligent preconception counseling led the parents to decide to conceive children, the parents would not be entitled to recover for loss of that child's society, companionship, or services as a normal child. [782, 783]

A child whose birth with a genetic defect had allegedly resulted from negligent preconception counseling by a genetics specialist had no cause of action for extraordinary expenses on his own behalf against the specialist, where the parents were entitled to recover those costs. [783-785]

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Stephen M. Winnick* (*Robert A. Sullivan* with him) for the plaintiffs.

---

[1]Thomas J. Viccaro, individually, and both as parents and next friends of Adam Viccaro.

*Timothy P. O'Neill* (*Susan M. Donnelly* with him) for the defendant.

WILKINS, J. A judge of the United States District Court for the District of Massachusetts has certified novel questions of Massachusetts law to this court. See S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). The judge asks whether a child who was born with a genetic defect and his parents have bases under Massachusetts law for recovery against a physician whose negligent preconception counseling led the parents to decide to conceive children.

The facts presented to us in association with the certified questions are brief. In November, 1976, not then married, the Viccaros consulted the defendant physician, a specialist in genetics, genetic disorders, and genetic counseling, concerning the possibility that Amy might have, or be a carrier of, a genetic disorder known as ectodermal dysplasia.[2] The defendant concluded that Amy did not have the disease and that there should be no likelihood of her developing the disorder or of having affected children. In October, 1977, the Viccaros were married. Relying on the defendant's assurances, they bore children. Their first child, a daughter, was born in July, 1980, apparently healthy, without manifestations of the disorder. On March 27, 1984, Adam was born severely afflicted with anhidrotic ectodermal dysplasia. He will require special medical care throughout his life and will suffer substantial physical pain and mental anguish. The Viccaros have suffered and will continue to suffer severe emotional distress and substantial physical injuries (whose nature and cause are not disclosed on the record). Their complaint seeks, in addition to emotional distress damages, recovery of the extraordinary expenses for Adam's care, support, and education; their

---

[2]For the purposes of certifying the questions to us, the judge accepted as correct the allegations of the complaint that several members of Amy's family were afflicted with ectodermal dysplasia, a severely disfiguring disorder that affects the skin, hair, nails, teeth, nerve cells, sweat glands, parts of the eyes and ears, and other organs of the body.

loss of companionship of a normal son; and their loss of the services and earnings of a normal son.[3]

## The Parents' Claim

We think it preferable to consider and decide questions concerning the parents' claim first. The first question as to them appears in the margin[4] and inquires as to whether there is in Massachusetts a cause of action against a physician for negligent preconception genetic counseling. The second question, also in the margin,[5] inquires about damages in specific

---

[3]In other jurisdictions, the claim that Adam asserts has generally been characterized as a "wrongful life" claim, one made by a child with a genetic defect who was born as a result of the defendant's negligence. See *Lininger* v. *Eisenbaum*, 764 P.2d 1202, 1204 (Colo. 1988). The claim the Viccaros assert has generally been termed a "wrongful birth" claim, a claim by parents that, because of the defendant's negligence, they gave birth to a child with a genetic or other congenital defect. *Id.* The claim asserted in *Burke* v. *Rivo, ante* 764 (1990), which we decide today, has often been placed in the category of "wrongful conception" or "wrongful pregnancy." That claim is that the birth of a normal, healthy child was a consequence of a negligently performed sterilization procedure or some other negligence without which the unwanted child would not have been born. *Lininger, supra* at 1204 n.3.

These labels are not instructive. Any "wrongfulness" lies not in the life, the birth, the conception, or the pregnancy, but in the negligence of the physician. The harm, if any, is not the birth itself but the effect of the defendant's negligence on the parents' physical, emotional, and financial well-being resulting from the denial to the parents of their right, as the case may be, to decide whether to bear a child or whether to bear a child with a genetic or other defect. We abstained from using any label in the *Burke* opinion, such as wrongful pregnancy, and shall similarly abstain in this case from using the labels "wrongful life" or "wrongful birth."

[4]"3. Does Massachusetts recognize a cause of action for wrongful birth, where the parents of a minor child afflicted with a genetic defect allege that the negligent pre-conception genetic counseling by a geneticist induced the parents to conceive and give birth to the child?"

[5]"4. If the answer to Question No. 3 is in the affirmative, what are the elements and measure of damages? Specifically:

    (a) May the parents recover damages for all financial burdens associated with raising the child?

    (b) May the parents recover damages for those expenses associated with meeting the child's special medical and educational needs? If yes, may the parents recover such damages for a time after the child has reached the age of majority?

detail. On the damage question, we shall answer only as to those elements of damage to which the Viccaros have argued they are entitled.[6]

If a child is born with a congenital or genetic disorder, almost all courts have allowed the parents to recover against a negligent physician the extraordinary medical, educational, and other expenses that are associated with and are consequences of the disorder. See, e.g., *Lininger* v. *Eisenbaum*, 764 P.2d 1202, 1206-1207 (Colo. 1988) (extraordinary medical and educational expenses of congenitally blind child, recoverable, even after his majority, if he will remain a legal dependent of parents; such damages not to be offset by any benefit to parents; no opinion expressed on emotional distress damages); *Haymon* v. *Wilkerson*, 535 A.2d 880, 885-886 (D.C. App. 1987) (extraordinary medical and other expenses, recoverable; no claim made for ordinary child-rearing expenses; postmajority expenses left unresolved); *Fassoulas* v. *Ramey*, 450 So. 2d 822, 823 (Fla. 1984) (extraordinary costs of rearing defective child to majority allowed but not ordinary rearing costs); *Siemieniec* v. *Lutheran Gen. Hosp.*, 117 Ill. 2d 230, 260-262 (1987) (extraordinary expenses allowed but sought only for period of child's minority; emotional distress damages denied); *Smith* v. *Cote*, 128 N.H. 231, 242-247 (1986) (medical and educational costs and extra burden of care by parents attributable to child's impair-

---

(c) May the parents recover damages for the extraordinary care which they provide to meet the needs of their child? If yes, may the parents recover damages for lost wages incurred in providing such extraordinary care?

(d) May the parents recover damages for their physical injuries and emotional distress associated with having and raising the child? If yes, in assessing damages must consideration be given to the countervailing emotional benefits?

(e) May the parents recover for the loss of the child's society and companionship?

(f) May the parents recover for loss of the child's services?"

[6]They disclaim any right to "all financial burdens associated with raising the child" (question 4 [a]) and advance no argument as to "loss of the child's services" (question 4 [f]).

ment, recoverable, including postmajority costs, but no recovery for emotional distress); *Schroeder* v. *Perkel*, 87 N.J. 53, 68-69 (1981) (recovery allowed for incremental medical costs); *Jacobs* v. *Theimer*, 519 S.W.2d 846, 849 (Tex. 1975) (expenses reasonably necessary for the care and treatment of child's physical impairment, recoverable); *Harbeson* v. *Parke-Davis, Inc.*, 98 Wash. 2d 460, 477 (1983) (extraordinary medical, educational, and similar expenses attributable to defective condition, recoverable; emotional distress of parents also recoverable, offset by any emotional benefits from the child's birth); *Dumer* v. *St. Michael's Hosp.*, 69 Wis. 2d 766, 776 (1975) (additional medical and supportive expense occasioned by the child's deformities, recoverable). The only authority to the contrary that we have discovered is in North Carolina and Missouri. See *Azzolino* v. *Dingfelder*, 315 N.C. 103, 111 (1985) (no recovery for postconception negligence allegedly leading to birth of child with Down's syndrome), cert. denied, 479 U.S. 835 (1986) (four-to-three decision). Compare *Jackson* v. *Bumgardner*, 318 N.C. 172, 180-181 (1986) (liability to parents for preconception negligence resulting in birth of healthy child); *Gallagher* v. *Duke Univ.*, 852 F.2d 773, 776 (4th Cir. 1988) (applying North Carolina law) (liability for preconception negligence resulting in birth of impaired child). See also *Wilson* v. *Kuenzi*, 751 S.W.2d 741, 745-746 (Mo.), cert. denied, 109 S. Ct. 229 (1988) (no liability for failure to advise of amniocentesis test that deprived mother of the chance to have an abortion); *Shelton* v. *St. Anthony's Medical Center*, 781 S.W.2d 48, 50 (Mo. 1989) (liability for some consequences of negligent failure to interpret ultrasound tests properly).

We agree with the general rule that the Viccaros are entitled to recover the extraordinary medical and educational expenses and other extraordinary costs associated with caring for Adam. If the Viccaros prove that, when Adam attains his majority, they will remain liable for Adam's support, they will be entitled to recover for the extraordinary expenses they will incur during Adam's majority. In Massachusetts, a parent is liable for the support of an adult child if the child is

physically or mentally impaired and incapable of supporting himself. *Feinberg* v. *Diamant*, 378 Mass. 131, 134 (1979). The emotional distress the Viccaros sustain as a result of the defendant's negligence and any physical harm caused by that emotional distress are also recoverable. See *Burke* v. *Rivo*, *supra* at 768.

The Viccaros' claim for the loss of Adam's society and companionship as a normal child lacks merit. The defendant is not responsible for the fact that Adam is afflicted with a substantial genetic disease. Although the defendant may be liable for certain damages because, had he not been negligent, according to the complaint, the Viccaros would not have conceived a child, the defendant cannot be liable for the Viccaros' loss of the companionship of a normal child.

We summarize our conclusions as to the parents' claims. Question 3, concerning the existence of a cause of action in the parents, we answer in the affirmative. There is one. We need not answer question 4 (a) because the Viccaros do not press a claim for all financial burdens associated with raising Adam. In response to the two parts of question 4 (b), we answer affirmatively that the Viccaros may recover for Adam's extraordinary medical needs and, as to the second question in question 4 (b), in certain circumstances the Viccaros could recover for extraordinary expenses they may incur after Adam's majority. Because the Viccaros may recover damages for the cost of the extraordinary care that Adam needs, we answer the first question in question 4 (c) in the affirmative. We do not have sufficient information, however, to answer the second part of question 4 (c), concerning the parents' right to recover for wages they lost or will lose in providing extraordinary care to Adam. In general, damages should be measured by the fair market value of the necessary extraordinary services. Perhaps the parents' lost wages will be an appropriate measure of recovery in some special circumstance. As to question 4 (d), the parents may recover for emotional distress and for physical harm caused by that emotional distress, offset by whatever emotional benefits they may derive from the existence of their first child and offset

(as the Viccaros concede) by any benefits that may be derived from the existence of Adam. We do not know what other physical injuries this question may refer to. For completeness, although we are not asked to comment on the point, whatever emotional benefits the parents may derive from the children may also be offset against the extraordinary expenses the parents may incur.

We see no basis for the Viccaros to recover for the loss of Adam's society and companionship as a normal child, and thus we answer question 4 (e) in the negative. Question 4 (f) we answer in the negative because the Viccaros make no serious argument that they are entitled to recover for the loss of Adam's services as a normal child.

## The Child's Claim

The judge has also asked us: "Does Massachusetts recognize a cause of action for wrongful life, where a minor child, afflicted with a genetic defect, alleges that the negligent preconception genetic counseling of his parents by a geneticist induced his parents to conceive and give birth to the child?" We answer the question in the negative. Because, as alleged by his parents, Adam would not have been born if the defendant had not been negligent, there is a fundamental problem of logic if Adam were allowed to recover against the defendant in a negligence-based tort action.

The almost universal rule in this country is that a physician is not liable to a child who was born because of the physician's negligence. See, e.g., *Elliott* v. *Brown*, 361 So. 2d 546, 548 (Ala. 1978); *Lininger* v. *Eisenbaum*, 764 P.2d 1202, 1209-1210 (Colo. 1988); *Blake* v. *Cruz*, 108 Idaho 253, 259-260 (1984); *Siemieniec* v. *Lutheran Gen. Hosp.*, 117 Ill. 2d 230, 251 (1987); *Bruggeman* v. *Schimke*, 239 Kan. 245, 254 (1986); *Wilson* v. *Kuenzi*, 751 S.W.2d 741, 743 (Mo. 1988) (see to the same effect, Mo. Rev. Stat. § 188.130 [1986]); *Smith* v. *Cote*, 128 N.H. 231, 252 (1986); *Becker* v. *Schwartz*, 46 N.Y.2d 401, 411-413 (1978) (no emotional damages); *Azzolino* v. *Dingfelder*, 315 N.C. 103, 108-110 (1985); *Ellis* v. *Sherman*, 512 Pa. 14, 18-20 (1986); *Nelson*

v. *Krusen*, 678 S.W.2d 918, 925 (Tex. 1984); *James G. v. Caserta*, 332 S.E.2d 872, 879-881 (W. Va. 1985); *Dumer* v. *St. Michael's Hosp.*, 69 Wis. 2d 766, 773 (1975); *Beardsley* v. *Wierdsma*, 650 P.2d 288, 289-290 (Wyo. 1982).

A few courts, however, have allowed a child who was born with a defect to recover against a negligent physician the extraordinary expenses that he or she will incur during his or her lifetime because of the hereditary defect. See *Turpin* v. *Sortini*, 31 Cal. 3d 220, 237-239 (1982) (child with hereditary deafness may recover extraordinary costs of child-rearing); *Procanik* v. *Cillo*, 97 N.J. 339, 352-354 (1984) (child with congenital rubella syndrome may recover extraordinary medical expenses but not general damages); *Harbeson* v. *Parke-Davis, Inc.*, 98 Wash. 2d 460, 479-480 (1983) (child may recover extraordinary expenses to be incurred during her lifetime as a result of congenital defect). Cf. *Cowe* v. *Forum Group, Inc.*, 541 N.E.2d 962, 965-966 (Ind. Ct. App. 1989) (child of mentally and physically impaired parents may recover support against custodian of parents for negligent failure to prevent his conception).

We faced a somewhat similar, but not identical, question in *Payton* v. *Abbott Labs*, 386 Mass. 540, 557-560 (1982), where we concluded that a woman, who would not have been born but for her mother's use of a drug manufactured by the defendants, was barred from recovery for physical or emotional damage she suffered as a result of her mother's ingestion of the drug. We said that "[t]he provider of the probable means of a plaintiff's very existence should not be liable for unavoidable, collateral consequences of the use of that means." *Id.* at 560. By the same token, the defendant whose negligence (it is asserted) is a reason for Adam's very existence should not be liable for the unfortunate consequences of Adam's birth with a genetic disease, such as his pain and suffering, emotional distress, and loss of his parents' consortium.

On a theoretical basis, it is difficult to conclude that the defendant physician was in breach of any duty owed to Adam. It is alleged, however, that Adam does exist as a re-

sult of the defendant's negligence and that he may incur sub-
stantial and extraordinary expenses for medical care, educa-
tional, and other needs. It is this pragmatic consideration
that has moved a few jurisdictions, as noted above, to allow a
child like Adam to recover those extraordinary expenses that
he will incur during his lifetime because of his genetic defect.
As long, however, as Adam's parents are entitled to recover
against the defendant for the extraordinary costs they will
incur because of Adam's genetic disease, Adam need not
have his own cause of action for those expenses. We do not
know Adam's life expectancy nor whether he has a reasona-
ble prospect of supporting himself in adulthood. We do not
totally discount the possibility that we might impose liability
for the extraordinary expenses of caring for a person like
Adam after his parents' deaths, perhaps in order to keep
such a person from being a public charge. That is not this
case, as far as we are told, and certainly no question has
been asked of us in these specific terms.

We answer question one in the negative, and need not dis-
cuss question two concerning the elements of recoverable
damages further because Adam does not have a cause of ac-
tion against the defendant.

O'CONNOR, J. (dissenting in part, with whom Nolan and
Lynch, JJ., join). I agree with the court's answers to the cer-
tified questions concerning the child's claims. I also agree
with the court's answers to questions 4 (e) and 4 (f), that is,
that the parents are not entitled to recover for the loss of the
child's society, companionship, and services "as a normal
child." *Ante* at 783. I do not agree, however, that Massachu-
setts should recognize a right of parents to recover damages
for the consequences to them of the birth of a child with ge-
netic defects.

In *Burke* v. *Rivo, ante* 764, 774 (1990), I expressed my
view, which the court appears to share, that an award of the
costs of raising a normal child without setting off the value of
the child to the parents would be intolerably unfair to de-

fendants. At the same time, I said that it would also be intolerable for a judge or jury to engage in an inquiry concerning the set-off. The result I reached was that, even though the financial burden of raising a normal child may in some situations be substantial, those costs, as a matter of public policy, should not be recoverable. My position in *Burke* was that an assumption that a judge or jury can measure the net loss to parents of the birth of a normal child is so inconsistent with the reverence we should have for human life that the harm to society from such an inquiry, augmented by the harm to the family and child, outweighs the value of compensating parents for the wrong they allege. My position in this case is the same. Although I recognize that the burden of raising an impaired child may be considerably heavier than the burden associated with raising a normal child, the controlling values and principles are the same. Therefore, I would answer certified questions 3, 4 (b), and 4 (d), "No."