Welch, J.
This is a medical malpractice action brought by Karen and Michael Rosen and the guardian ad litem for their biological (now former, due to an intervening adoption) son against Jeffrey Katz, M.D. The plaintiffs allege that Dr. Katz negligently failed to apprise the parents of the findings and recommendations stated in a radiology report of an ultrasound examination dated January 16, 1992 and negligently failed to order a repeat fetal ultrasound examination in the second trimester. The plaintiffs’ son, Corey Rosen, was born on July 14, 1992, with cardiac defects and without an esophagus. The plaintiffs maintain that had the parents known of the cardiac defects and missing esophagus, they would have elected to terminate the pregnancy.
The original complaint contained three counts: (1) Count I sought damages for Karen Rosen; (2) Count II sought damages for Michael Rosen; and (3) Count III sought damages for Corey Rosen. Karen and Michael Rosen then filed a motion to appoint Mary F. McCabe as guardian ad litem. This court allowed this motion on April 12, 1993. Hie defendant then filed a motion to dismiss Count III of the plaintiffs’ complaint. This court (Grabau, J.) dismissed Count III on October 1, 1993 because on September 13, 1993, Karen and Michael Rosen gave Corey up for adoption and, therefore, no longer had legal custody. In addition, the Court noted that a guardian ad litem had been appointed for the child. Corey was then formally adopted by his foster parents, referred to here as John and Jane Doe.
Thereafter, the guardian ad litem, Mary F. McCabe, moved to intervene pursuant to Mass.R.Civ.P. 24 in order to include a claim for the minor child, Corey Doe, who was no longer the parent plaintiffs’ legal ward. This Court granted the guardian ad litem’s motion to intervene on August 31, 1994 [2 Mass. L. Rptr. 566). This resulted in a revival of Count III. Count III, as presented in the plaintiffs’ first amended complaint, solely seeks damages for the “extraordinary costs and expenses of necessary past, present and future medical and any other health care and additional treatment; and the expected extraordinary costs of his education and care in his lifetime.” (First Amended Complaint, para. 16.)
As discussed in my Memorandum of Decision and Order dated August 31, 1994, I allowed the amended Count III to go forward because this case appeared to fit an exception to the general rules announced by the Supreme Judicial Court in Viccaro v. Milunsky, 406 Mass. 777, 785 (1990). As stated in that previous Memorandum:
Although a child is not entitled to bring a ‘wrongful life’ claim against a negligent physician, the Supreme Judicial Court has intimated that a child may have a cause of action against the physician for extraordinary expenses when the child’s parents are not able to bring such a claim, especially when the child’s only other alternative is to become a public charge. In Viccaro the Supreme Judicial Court stated that “(a]s long ... as [the child’s] parents are entitled to recover against [the physician] for the extraordinary costs they will incur because of [the child’s] genetic disease, [the child] need not have his own cause of action for those expenses . . . We do not totally discount the possibility that we might impose liability for the extraordinary expenses of caring for [the child] after his parents’ deaths, perhaps in order to keep such a person for being a public charge.” Viccaro, supra at 785.
This Court’s reasoning was based upon an unopposed factual representation presented during oral argument by the guardian ad litem. The guardian ad litem represented to the Court that Corey’s extraordinary medical expenses and other costs were being provided by the public through health benefits paid by the Commonwealth. Thus, as a result of Karen and Michael Rosen’s decision to surrender their child to the Department of Social Services, Corey was a “public charge.” At the time that the guardian ad litem made this representation, it was factually correct because the Commonwealth did not then realize that the adoptive parents had health insurance that would cover some of Corey’s extraordinary medical expenses. Since the time of this Court’s earlier decision, discovery has uncovered the fact that the adoptive parents’ current health insurance will cover a substantial portion of Corey’s projected medical expenses.
The facts, as presented at the present summary judgment stage, can be fairly characterized as establishing that the adoptive parents’ Tufts Health Plan medical insurance will cover Corey’s medical operations and related health care but will not cover such expenses as projected therapy costs and the costs for his special education. For example, Corey has received special education and therapy through the Commonwealth’s early intervention program and now is enrolled, again receiving special education and therapy, at the North Shore Educational Consortium. These expenses, which are indisputably considerable, are paid by the Commonwealth. Corey, as a result of his birth defects, suffers from global developmental delays and will continue to suffer from them in the foreseeable future. Although the parties dispute the extent of Corey’s future disabilities, it appears beyond question that he will require years of therapy to address his special needs. See affidavit of Jane Doe, dated January 4, 1996. This type of special education and therapy is not covered by the adoptive parents’ health care plan. Although impossible to quantify exactly, it appears undisputed that the health care plan (as long as the adoptive parents continue to be enrolled in the plan) will pay very substantial amounts towards Corey’s medical care. Meanwhile, the Com *662 monwealth will be required to pay substantial sums for the therapy and education required by Corey due to his significant special needs.
The defendant has filed a motion for reconsideration and combined it with a motion for summary judgment. As to reconsideration, the defendant correctly notes that this Court had rendered its earlier decision based on a factual assumption which later turned out to be partially false. That assumption was that all of Corey’s medical expenses were being paid by the Commonwealth of Massachusetts and, thus, Corey was plainly a “public charge.” The defendant argues that Corey cannot now be considered a public charge given that the private health insurance will cover many of his medical needs. Given this fact, the defendant continues, this Court must reconsider its decision and rule that this case does not fall within any narrow exception suggested in the Viccaro decision. The defendant also argues that, even if the Court does not reconsider its earlier decision, summary judgment should be granted because the undisputed facts of this case do not fall within any exception noted in Viccaro and the Commonwealth of Massachusetts does not recognize such a cause of action.
The defendant’s motion for reconsideration raises a very interesting point given the rather unique factual setting of this case. It is possible that Corey may not be considered a complete “public charge” since his adoptive parents (or more accurately, their private insurer) will pay for much of his medical care. Whether or not someone is a “public charge,” however, is not determinative. Given the absence of any parents to assert a Viccaro cause of action for the continuing extraordinary expenses, this situation still appears to be the exceptional case envisioned by the majority in the Viccaro court, i.e. where a child born with a defect is allowed to recover against a negligent physician for extraordinary expenses that he or she will incur during his or her lifetime because of the congenital defect. Therefore, for the reasons stated below, the defendant’s motion for reconsideration and his motion for summary judgment are both DENIED.
DISCUSSION
These motions only relate to Count III. Count III does not insert a “wrongful life” claim in its most traditional sense. Namely, Corey is not suing for the “unfortunate consequences [ofhis] birth with a genetic disease, such as his pain and suffering, emotional distress and loss of his parents’ consortium.” Viccaro, supra at 784. Instead, this case presents a significantly more limited claim for Corey’s past and future extraordinary medical, health care, treatment, educational and special care costs incurred as a result of the alleged negligence. Certain states have recognized this precise cause of action, i.e., the child’s right to sue for the extraordinary costs. Procanik by Procanik v. Cillo, 478 A.2d 755, 762 (N.J. 1984); Harbeson v. Parke-Davis, Inc., 656 P.2d 483, 495 (Wash. 1983); Turpin v. Sortini, 643 P.2d 954, 965 (Cal. 1982). See also Rossi by Rossi v. Somerset Ob-Gyn Associates, 879 F.Supp. 411 (D.N.J. 1994) (applying New Jersey law, recognizing child’s cause of action but denying recovery).
As the Supreme Judicial Court explained in Viccaro:
It is alleged . . . that [the plaintiff child] Adam does exist as a result of the defendant’s negligence and that he may incur substantial and extraordinary expenses for medical care, educational, and other needs. It is this pragmatic consideration that has moved a few jurisdictions, as noted above, to allow a child like Adam to recover those extraordinary expenses that he will incur during his lifetime because of his genetic defect.
Id. at 784-785. The Supreme Judicial Court saw no reason to follow the lead of these other states in recognizing such a cause of action on behalf of the child in Viccaro because they found it unnecessary. As the Court stated: “As long, however, as Adam’s parents are entitled to recover against the defendant for extraordinary costs they will incur because of Adam’s genetic disease, Adam need not have his own cause of action for those expenses.” Id. at 785 (emphasis supplied).
This case requires the Court to consider the next step. That is, Corey’s parents are not entitled to recover against the defendant for the ongoing extraordinary costs that Corey will incur because of the defect (due to the fact that they are no longer his legal guardians or official parents). Nor will Corey’s adoptive parents be entitled to recover, since the defendant owed them no duty. Therefore, this Court must consider whether Corey should have this cause of action since no one else can recover the extraordinary costs. And, extraordinary costs there will be. Although it is a matter of debate how long Corey will need special education and therapy and extraordinary health care, there is no doubt that significant sums have been spent and will be spent in the future because of his birth defect. Ordinarily, under the cause of action recognized in Viccaro, Corey’s biological parents would be able to recover these extraordinary costs from the defendant Doctor if negligence is proven. Simply because the parents were unable to cope with the burden of such a child and gave the child up for adoption, does not appear to be a legitimate reason to relieve the defendant of liability. After all, someone (in this case apparently a private health insurer, the adoptive parents, and the Commonwealth) is going to pay these extraordinary costs. In this situation, it appears fair (as recognized in Viccaro) to require the negligent Doctor to pick up these costs if negligence is proven. Thus, in a situation where Corey’s parents are not entitled to recover against the defendant for the ongoing extraordinary costs, Corey should have a cause of action for his own ongoing extraordinary expenses. *663 This places the defendant in no worse position that he would have been had the parents not placed Corey for adoption and had pursued not only their rights for past extraordinary costs but for future extraordinary costs under the Viccaro decision.
This holding is undoubtedly an extension of the Viccaro cause of action, but it appears to be an appropriate and limited extension. A different result would free the defendant from the bulk of his potential liability, for the sole reason that another family has adopted Corey. Such a result would be unequitable. Thus, Count III states a cause of action. The defendant’s motion for reconsideration and motion for summary judgment are denied.
ORDER
For the reasons stated above, the defendant’s motion for reconsideration and motion for summaryjudgment are DENIED.