Cratsley, J.
This matter comes before this Court on defendants’ motion for summary judgment[1] on each of plaintiff Thomas Doolan’s negligence claims (Counts III, VI, XII, XVIII, and XXI), as well as on each of plaintiffs John and Laureen Doolan’s loss of consortium claims (Counts XXXI through XXVIII, inclusive), pursuant to Mass.R.Civ.P. 56. Based on an examination of the record and the arguments of counsel heard on September 25, 2000, and for the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED as to Counts III, VI, XII, XVIII, XXI, and XXXI through XXXVIII, inclusive, of the plaintiffs’ complaint.[2]

BACKGROUND

Pursuant to the summary judgment record, the undisputed material facts are as follows:
In 1993, plaintiff Laureen Doolan gave birth to her first child, Samantha, who was born afflicted with cystic fibrosis. Laureen and her husband, plaintiff John Doolan, subsequently learned that they were both carriers of a cystic fibrosis gene mutation known *483 both carriers of a cystic fibrosis gene mutation known as Delta F-508. Mr. and Mrs. Doolan wished to have another child, but they wanted some assurance that their second child would not have cystic fibrosis.
In 1996 Mr. and Mrs. Doolan agreed to participate in a series of procedures conducted jointly by the co-defendants[3] that were designed to provide the Doolans with a degree of certainty that their second child would not be afflicted with cystic fibrosis. In November 1996 defendant Ronald Carson, Ph.D. (“Dr. Carson”), the Scientific and Laboratory Director at defendant MPD, harvested a series of Mrs. Doolan’s eggs, fertilized the eggs with Mr. Doolan’s sperm in vitro, and prepared the resulting embryos for genetic testing. A cell from each of the resulting ten embryos was then retrieved by MPD, whereupon the cells were sent to defendant Genzyme Corporation (“Genzyme").
In December 1996 Genzyme tested the ten cells to ascertain which embryos were (1) afflicted with, (2) carriers of, or (3) free of the cystic fibrosis gene mutation, Delta F-508. In a letter dated December 23, 1996, defendant Katherine Klinger, Ph.D. (“Dr. Klinger”), the Vice President of Science at Genzyme, advised MPD that Embryo No. 7 was free of the cystic fibrosis gene mutation and suitable for implantation. As a result of this finding, Mr. and Mrs. Doolan decided to have MPD implant Embryo No. 7 into Mrs. Doolan on March 10, 1997.
On November 21, 1997, Mrs. Doolan gave birth to her son, minor plaintiff Thomas Doolan. Shortly after Thomas’ birth, it was discovered that he did, in fact, suffer from cystic fibrosis and that his condition was due to the Delta F-508 genetic mutation. All three plaintiffs assert claims arising out of (1) MPD’s and Dr. Carson’s alleged negligence in implanting an embryo that contained the cystic fibrosis gene mutation, and (2) Genzyme’s and Dr. Klinger’s alleged negligence in advising MPD that Embryo No. 7 was free of the Delta F-508 gene mutation and therefore was suitable for implantation.

DISCUSSION

A. Summary Judgment Standard
A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). To defeat summary judgment, the nonmoving party must go beyond the pleadings and articulate specific facts demonstrating the existence of a genuine issue for trial. Korouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).
B. Minor Plaintiff Thomas Doolan’s Negligence Claim
The almost universal rule in this country is that a physician is not liable to a child who was born because of the physician’s negligence. Viccaro v. Milunsky, 406 Mass. 777, 783 (1990). Courts have generally referred to claims alleging that the physician negligently failed to inform the child’s parents of the possibility of their bearing a severely defective child, thereby preventing a parental choice to avoid the child’s birth, as “wrongful life” cases. Payton v. Abbott Labs, 386 Mass. 540, 557-58 (1982), citing Phillips v. United States, 508 F.Sup. 537, 538 n. 1 (D.S.C. 1980). The Massachusetts Supreme Judicial Court (SJC) has reasoned that granting the minor plaintiff a cause of action in wrongful life cases would require a comparison of the relative monetary values of existence and nonexistence, a task that is beyond the competence of the judicial system. Payton at 559.
In Viccaro v. Milunsky, 406 Mass. 777, 783 (1990), the SJC addressed the issue of whether a child born with a genetic defect due to the alleged negligence of a geneticist had a cause of action for wrongful life. In that case, the minor plaintiffs mother consulted the defendant physician in 1976 about the possibility that she might have, or be a carrier of, a severely disfiguring genetic disorder known as ectodermal dysplasia. Id. at 778. Relying on the defendant’s assurances that Mrs. Viccaro did not have the disease and that there was no likelihood of her having children affected with the disease, Mr. and Mrs. Viccaro decided to bear children. Id. In 1984 the Viccaros second child, minor plaintiff Adam Viccaro, was born severely afflicted with ectodermal dysplasia. Id.
The Viccaros brought their claims in the United States District Court for the District of Massachusetts, whereupon the District Court Judge certified novel questions of law to the SJC. Viccaro at 778. Pursuant to the child’s claim, the District Court Judge asked: “Does Massachusetts recognize a cause of action for wrongful life, where a minor child, afflicted with a genetic defect, alleges that the negligent pre-conception counseling of his parents by a geneticist induced his parents to conceive and give birth to the child?” Id. at 783. The SJC answered this question in the negative, holding that where the defendant’s alleged negligence is a reason for the minor plaintiffs very existence, the defendant should not be liable for the unfortunate consequences of the minor plaintiffs birth with a genetic disease. Id. at 784.
The holding in Viccaro is clearly applicable to this case, where it is undisputed that Thomas Doolan would never have been born were it not for the defendants’ alleged negligence in testing and/or implanting Embryo No. 7. Plainly put, Thomas Doolan asserts that the defendants’ alleged negligence denied his parents the opportunity to choose not to conceive and give birth to him.
*484 Nevertheless, the minor plaintiff argues that public policy, fairness, and justice require that this Court allow him a chance to recover for the pain and suffering, as well as for the extraordinary financial expenses, that he will incur as a result of the defendants’ alleged negligence. Since Thomas Doolan does exist, and his existence is allegedly due to the negligence of the defendants, the minor plaintiff submits that he should be allowed the opportunity to recover from the defendants. When the minor plaintiff in Viccaro made this exact same argument, the SJC reasoned that as long as his parents were entitled to recover for the extraordinary medical costs associated with raising a child afflicted with a genetic disease, the minor plaintiff need not have his own cause of action for those expenses. Viccaro at 785. Therefore, under the holding in Viccaro, this Court denies minor plaintiff Thomas Doolan’s cause of action for so-called “wrongful life.”
Perhaps sensing the tenuous nature of his “wrongful life” claim under the holding in Viccaro, minor plaintiff Thomas Doolan asserts that his negligence claim against the defendants is not a “wrongful life” claim, but rather it is a pre-conception tort, and as such it is not foreclosed under Massachusetts law. Unlike “wrongful life” claims, which the holding in Viccaro expressly bars, the SJC has yet to address the viability of pre-conception tort claims. See McNulty v. McDowell, 415 Mass. 369, 373 (1993).
An analysis of the context in which other jurisdictions have recognized pre-conception tort claims serves only to re-enforce this Court’s conclusion that Thomas Doolan’s claim is one for “wrongful life.” The Supreme Court of Indiana has defined pre-conception torts as those cases which allege a defendant’s tortious conduct as the cause of abnormalities in infants that would otherwise have been born normal and healthy. Walker v. Rinck, 604 N.E.2d 591, 594 (Ind. 1992). In Walker, the Supreme Court of Indiana upheld a child’s cause of action for pre-conception tort where the defendant physician failed to administer RhoGAM injections to the minor plaintiffs’ mother, who had Rh-negative blood. Id. at 592. The defendant’s failure to administer RhoGAM during Mrs. Walker’s first pregnancy resulted in her blood developing antibodies that caused her three later-conceived children to be born with serious defects. Id. Since the three minor plaintiffs would have been born normal and healthy were it not for the defendant’s negligence in failing to provide Mrs. Walker with RhoGAM injections during her first pregnancy, the Supreme Court of Indiana upheld their cause of action for pre-conception tort. Id. at 594.
In Monusko v. Postle, 437 N.W.2d 367, 369 (Mich.App. 1989), the Court of Appeals of Michigan upheld a child’s cause of action for pre-conception tort where the defendant physician failed to test Mrs. Monusko for her rubella status and to immunize her against rubella prior to the minor plaintiffs conception. Had the defendant tested Mrs. Monusko for rubella and subsequently immunized her, the minor plaintiff would have been born healthy and, therefore, the Court of Appeals of Michigan categorized the minor plaintiffs claim as a pre-conception tort. Id.
In both Rinck and Monusko, the negligence of the defendant caused the minor plaintiff to be born with severe defects, when he/she would have otherwise, been born healthy. In this case, however, there is no such causal connection between the alleged negligence of the defendants and the injuries actually suffered by Thomas Doolan. The minor plaintiff has not alleged that any of the defendants did anything to directly cause Thomas Doolan to be afflicted with the Delta F-508 gene mutation. Stated otherwise, there is no way Thomas Doolan could ever have been born without cystic fibrosis. Therefore, given the way other jurisdictions have interpreted the pre-conception tort, it is evident that this case does not fall within its scope.
In conclusion, the essence of Thomas Doolan’s claim is not that the alleged negligence of the defendants caused him to be born with cystic fibrosis, but rather that the alleged negligence of the defendants denied his parents the opportunity to choose not to conceive and give birth to him. This is precisely the "fundamental problem of logic” that the SJC sought to avoid when it denied the minor plaintiff a cause of action for “wrongful life” in Viccaro. See Viccaro at 783. Therefore, under the holding in Viccaro, the defendants are entitled to judgment as a matter of law on the minor plaintiffs negligence claim.
C. John and Laureen Doolan’s Claims for Loss of Consortium
Plaintiffs John and Laureen Doolan advance two arguments in support of their claims for loss of consortium. The plaintiffs first argue that M.G.L.c. 231, §85X creates a cause of action for parents seeking to recover for the loss of consortium of a dependent child. Section 85X provides:
The parents of a minor child or an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury.
The plain language of the preceding section indicates that the plaintiffs may only recover for the loss of consortium of Thomas Doolan against any person who is legally responsible for causing such injury. Plaintiffs have failed to put forth any evidence suggesting that the defendants are legally responsible for causing Thomas Doolan to be born afflicted with cystic fibrosis. This analysis is similar to that found in Section B, regarding Thomas Doolan’s own negligence claims. See pp. 6-7, supra. Therefore, this Court holds as a matter of law that M.G.L.c. 231, §85X does not confer a cause of action for loss of consortium on the plaintiffs, John and Laureen Doolan.
*485 The second argument made by the plaintiffs in support of their loss of consortium claims asks this Court to undertake an analysis in the realm of the hypothetical. Mr. and Mrs. Doolan assert that were it not for the alleged negligence of the defendants, they would currently be raising a boy named Thomas, and that this child would not be afflicted with cystic fibrosis. Since this hypothetical “healthy” Thomas Doolan would be more likely to be able to offer society and companionship to his parents for the duration of their lifetimes than would the actual Thomas Doolan, plaintiffs reason that they have a cause of action for loss of consortium.
Plaintiffs’ argument fails for two reasons. First, the extent of any loss of consortium damages for a child that was never born would be far too speculative to uphold plaintiffs’ cause of action. For example, the jury would have to consider the quality of the relationship plaintiffs might have had with their hypothetical son in assessing Mr. and Mrs. Doolan’s loss of consortium damages. Furthermore, plaintiffs’ assertion that this hypothetical Thomas Doolan would have been “healthy” discounts the possibility that he might have been afflicted with another type of birth defect or long term illness.
In addition to its speculative nature, the other reason plaintiffs’ argument fails is based on the SJC’s resolution of the plaintiffs’ loss of consortium claim in Viccaro. The SJC denied the Viccaros’ loss of consortium claim on the grounds that the defendant could not be held responsible for the fact that their son was afflicted with a genetic disease. Viccaro, 406 Mass. at 782. Therefore, as plaintiffs have not put forth sufficient evidence suggesting that the defendants were actually responsible for Thomas Doolan’s cystic fibrosis, the defendants are entitled to summary judgment as a matter of law on the parent plaintiffs’ claims for loss of consortium.

ORDER

For the reasons stated herein, it is ORDERED that defendants’ motion for summary judgment is ALLOWED as to Counts III, VI, XII, XVIII, XXI, and XXXI through XXXVni, inclusive, of the plaintiffs’ complaint.

The defendants have filed a joint motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). However, in addition to the pleadings, this Court has accepted the lab report written by defendant Dr. Klinger, as well as the expert opinion letter of Dr. Craig Gerard, into the record. Therefore, the defendants’ motion will be treated as one for summary judgment, pursuant to Mass.R.Civ.P. 56.

Defendants also appear to have filed for summary judgment on Count XI, plaintiff John Doolan’s negligence claim against Dr. Carson. Defendants do not advance any arguments in support of summary judgment as to Count XI, and therefore their motion is DENIED.

Defendants IVF America (MA), Inc., MPD Medical Associates (MA), P.C., d/b/a Reproductive Science Center of Boston, and Integramed America, Inc. are related entities and will be referred to as “MPD.”