Billings, Thomas P., J.
BACKGROUND
This is an action for medical negligence. The Complaint alleges that Cindy Bell was born on March 8, to Yanjun Li and Li Zhong. The mother, Yanjun Li, was 35 years of age at conception. Her native language is Mandarin Chinese, but she was not offered the services of an interpreter at her medical appointments; nor was she adequately informed of the availability of amniocentesis or chorionic villous sampling to identify any potential genetic abnormalities in her fetus. Four days after her birth, on March 22, 2011 Cindy was diagnosed with DiGeorge Syndrome, congenital heart disease, and ventricular septal defect.
This action was commenced on April 13, 2015. Eleven individual medical providers, a practice group, and Emerson Hospital are named as defendants. The parents seek an award of damages against each for the extraordinary medical and other expenses they will incur in raising and caring for Cindy, emotional distress and physical pain and suffering, and lost wages and earning capacity. Ms. Li, as Cindy’s mother and next friend, additionally seeks damages on Cindy’s behalf “so that after the death of her parents, Cindy does not become a charge for the public.”
All defendants seek dismissal of the complaint (a) as untimely under the applicable three-year statute of limitations (G.L.c. 260, §4), and (b) as to the claims brought on Cindy’s behalf, as pleading a “wrongful life” cause of action not recognized in Massachusetts law. Emerson Hospital additionally challenges (c) the claims against it, all of which are based on vicarious liability for the acts and omissions of six of the individual defendants, two of whom (Dr. Davidson and Ms. Brillinger, a genetic counselor) are alleged on information and belief to be employees of the hospital and the other four of whom (Drs. Travais, Bond, Jordano-Alter and Rubin) are alleged to have had privileges at the hospital.
With their opposition to the motions, the plaintiffs submitted a motion for leave to amend their Complaint a second time to include supplemental paragraphs 37a-37g, additional allegations of fact pertaining to the limitations issue. No party objecting at oral argument, the motion to amend is ALLOWED, and the “clarifying averments” are alluded to below as necessary.
DISCUSSION A. Statute of Limitations
As noted above, Cindy was born on March 8, 2011. On March 22, 2011 she was diagnosed with several congenital conditions, at least one of which (DiGeorge Syndrome), all parties agree, is unquestionably the result of a chromosonal defect. This action was filed on April 13, 2015.
The additional allegations of paragraphs 37a-37g of the Second Amended Complaint supply the following chronology:
6/28/11: The plaintiffs having retained counsel, an employee of the firm of Kenneth M. Levine and Associates (“Levine”) requests records of Yanjun Li from Emerson Hospital and Concord OB/GYN.
7/6/11: Levine requests records of Cindy from Emerson Hospital, UMass Memorial Medical Center, and Child Heart Associates.
7/8/11: The Keeper of records of Concord OB/GYN requests payment of $50.72 for records.
7/11/11: The Keeper of Records of Emerson Hospital sends Levine a letter declining to send records because they are privileged and sensitive, and were not specified to be released on the authorization form.
7/15/11: UMass Memorial Medical Center sends Levine a letter reporting its inability to comply with his request for Cindy’s records.
8/1/11: Levine sends a second request to Emerson Hospital for Cindy’s records.
8/12/11: Levine sends a second request to UMass Memorial for Cindy’s records.
3/5/12: Levine sends Healthport (UMass Memorial’s vendor for records fulfillment) payment for Cindy’s records.
4/9/12: Levine sends Concord OB/GYN payment for Yanjun Li’s records.
4/17/12: Concord OB/GYN certifies a copy of Yanjun Li’s records and sends it to Levine.
5/6/14: The Lis’ present counsel (Mr. Halstrom) receives Emerson Hospital records, which “[apparently, Levine never received.”
The timeliness or untimeliness of the commencement of this action depends on when the Lis’ causes of action “accrued.”
Generally, a cause of action in negligence “accrues when some harm has occurred even though the full extent and nature of that harm has not been and cannot be established immediately.” The discovery rule tolls the accrual of a cause of action, however, “in circumstances where the plaintiff did not know or could not reasonably have known that he or she may have been harmed by the conduct of another.” Thus, under the discovery rule, a cause of action accrues when “an event or events have occurred *396 that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.” More specifically, “[w]e do not require that aplaintiff have notice of a breach of duty before a cause of action may accrue, but we do require that a plaintiff have (1) knowledge or sufficient notice that she was harmed, and (2) knowledge or sufficient notice of what the cause of harm was.”
Doherty v. Admiral’s Flagship Condominium Trust, 80 Mass.App.Ct. 104, 107-08 (2011) (citations omitted).
Put more succinctly, a negligence claim accrues when “a plaintiff knows or reasonably should know that [she] has sustained appreciable harm as a result of a defendant’s negligence.” Malapanis v. Shirazi, 21 Mass.App.Ct. 378, 382 (1986) (citations omitted). In a medical malpractice case,
Massachusetts does not require discovery of each of the elements of the cause of action—duty, breach, causation, and damages before the limitation clock in G.L.c. 260, Section 4 starts ticking. Rather, the three-year limitations period commences to run when a reasonably prudent person (in the tort claimant’s position), reacting to any suspicious circumstances of which he might have been aware should have discovered that he had been harmed by his physician’s treatment.
Id. at 282-83.
The defendants make much of the fact that within months—perhaps weeks or even days—of receiving Cindy’s diagnosis, the Lis had retained counsel, who apparently had the present defendants—or many of them, at least—in his sights. Retention of counsel and preliminary steps in the right direction are not, however, “dispositive of the issue of when the plaintiff was aware that the defendant’s actions may have caused her harm,” absent a thorough investigation and, in some cases perhaps, an expert medical opinion in favor of liability. Lindsay v. Romano, 427 Mass. 771, 775-76 (1998). Usually, “[w]hen a plaintiff knew or should have known of his cause of action is a question of fact to be determined by the jury,” id. at 74. There may be cases in which the issue is established as a matter of law in the allegations of the Complaint—the auto accident in which the drivers exchanged paperwork at the scene comes to mind—but this is not one of them.[1]
B. Wrongful Birth
In Viccaro v. Milunsky, 406 Mass. 777 (1990), the SJC responded to certified questions from a judge of the United States District Court for the District of Massachusetts, concerning
whether a child who was born with a genetic defect and his parents have bases under Massachusetts law for recovery against a physician whose negligent preconception counseling led the parents to decide to conceive children.
Id. at 778. Where the parents’ claims are concerned, the SIC followed the majority rule:
If a child is born with a congenital or genetic disorder, almost all courts have allowed the parents to recover against a negligent physician the extraordinary medical, educational, and other expenses that are associated with and are consequences of the disorder.
Id. at 780. Thus, the parents may recover these costs during the child’s minority. Also, if the parents “prove that, when [the child] attains [her] majority, they will remain liable for [her] support, they will be entitled to recover for the extraordinary expenses they will incur during [the child’s] majority.”[2] Id. at 781. The parents additionally “may recover for emotional distress and for physical harm caused by that emotional distress” and, in some circumstances, “for wages they lost or will lose in providing extraordinary care to [the child].” Id. at 782.
Although the parents have a cause of action, “[t]he almost universal rule in this country is that a physician is not liable to a child who was born because of the physician’s negligence.” The SJC adopted this rule as well, agreeing that “the defendant whose negligence (it is asserted) is a reason for [the child’s] very existence should not be liable for the unfortunate consequences of [her] birth with a genetic disease, such as [her] pain and suffering, emotional distress, and loss of [her] parents’ consortium.” Id. at 783-84.
Still, the SJC left the door open a crack, noting that “[a] few courts . . . have allowed a child who was born with a defect to recover against a negligent physician the extraordinary expenses that he or she will incur during his or her lifetime because of the hereditary defect.” It concluded:
On a theoretical basis, it is difficult to conclude that the defendant physician was in breach of any duty owed to Adam [the Viccaros’ disabled child]. It is alleged, however, that Adam does exist as a result of the defendant’s negligence and that he may incur substantial and extraordinary expenses for medical care, educational, and other needs. It is this pragmatic consideration that has moved a few jurisdictions ... to allow a child like Adam to recover those extraordinary expenses that he will incur during his lifetime because of his genetic defect. As long, however, as Adam’s parents are entitled to recover against the defendant for the extraordinary costs they will incur because of Adam’s genetic disease, Adam need not have his own cause of action for those expenses. We do not know Adam’s life expectancy nor whether he has a reasonable prospect of supporting himself in adulthood. We do not totally discount the possibility that we might impose liability for the extraordinary expenses of caring for a person like Adam after his parents’ deaths, perhaps in order to keep such a person from being a public charge. That is not this case, as far as we are told, *397 and certainly no question has been asked of us in these specific terms.
Id. at 784-85 (emphasis supplied).[3]
As pled, this is the case that the Viccaro court envisioned as possible: the Second Amended Complaint alleges that “plaintiff Cindy is expected to outlive her parents,” and seeks damages from each defendant “for all medical, psychological, educational and residential expenses after the death of both her parents.” While the Viccaro court’s choice of words— "(w]e do not totally discount . . ."—would never be mistaken for a holding for either side, it reflects the court’s understanding that this question was not posed by the District Court judge to whom, so far as appeared, it had not been presented or argued. The issue, in other words, was left to another day and another case.
An award of damages for the “extraordinary expenses” of support and care for the disabled child, even after her parents’ deaths, seems a logical extension of Viccaro's grant of these same expenses during their lifetimes and I hold, subject as always to appellate review, that it is consonant with the law of Massachusetts.[4] The jury should be instructed that the parents may recover only the present value of those expenses for which they will be responsible during the greater of their actuarial lifetimes, and that the child may recover only the present value of whatever portion she will bear of the medical, vocational, housing, and other costs of living attributable to her genetic disorder(s) for whatever period, if any, she is actuarially likely to outlive her parents, taking into account her disabilities and current state of health.
3. Vicarious Liability of Emerson Hospital
In paragraph 15 of the Complaint, the plaintiffs allege,
Upon information and belief Defendant Emerson Hospital . . . was the employer of defendants Dr. Davidson, and Ms. Brillinger. Upon information and belief at all relevant times hereto, Emerson granted privileges to defendants Dr Travais, Dr. Bond, Dr. Jordano-Alter and Dr. Rubin.
It is a “generally accepted proposition that a physician performing medical services in a hospital acts as an independent contractor, and not as a servant of the hospital, unless the hospital has the power of control or direction over the physician’s professional conduct.” Hohenleitner v. Quorum Health Resources, 435 Mass 424 (2001) (citations omitted). Hospitals, therefore, are not vicariously liable for a physician’s negligence simply because s/he had admitting privileges. If a physician or other medical provider is an employee of the hospital, on the other hand, vicarious liability is established, and “any further analysis of the employer’s right to direct and control is unnecessary.” See Dias v. Brigham Medical, 438 Mass. 317, 322 (2002).
The Complaint therefore states a claim against Emerson for liability coextensive with that of Dr. Davidson and/or Ms Brillinger, but not of Dr. Travais, Dr. Bond, Dr. Jordano-Alter, Dr Rubin, or others. Although Emerson has submitted an affidavit averring that none of the individual defendants were its employees, this is not a proper response to a Rule 12(b)(6) motion.
ORDER
For the foregoing reasons, Plaintiffs Cross Motion to Amend the First Amended Complaint to Add Clarifying Averments is ALLOWED without opposition; Emerson Hospital’s Motion to Dismiss is ALLOWED IN PART, insofar as the Complaint alleges that it is vicariously liable for the conduct of Drs. Travais, Bond, Jordano-Alter and Rubin, and is otherwise DENIED; and the other defendants’ Motions to Dismiss are DENIED in their entirety.

 A Rule 12(b)(6) motion may be supplemented with documents referenced in or attached as exhibits to, or used in the framing of, the complaint, as well as matters of public record and items appearing in the record of the case. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004); Schaer v. Brandeis University, 432 Mass. 474, 477 (2000); Harhen v. Brown, 431 Mass, 838, 840 (2000). The affidavits proffered by Emerson Hospital, concerning its legal relationships with the six individual defendants enumerated above and the reasons for the late production of its records, do not fall into any of these categories.

 he court noted that under Massachusetts law, the parents of a disabled child must continue to support her in adulthood “if the child is physically or mentally impaired and incapable of supporting [her]self." 406 Mass, at 781-82; but see footnote 3, infra.

 Nlie logic of assessing damages so as to prevent a disabled adult from becoming a “public charge” may be partially or wholly obsolete, given current-day programs and benefits now available to disabled adults, irrespective of income, from the Department of Developmental Disability and perhaps other agencies (assuming, of course, that such availability will continue into the foreseeable future). Unless the collateral source mle says otherwise—an issue not briefed in this case—an award of damages, whether during or after the parents’ life expectancy, should presumably account for this; i.e., it would be up to the plaintiffs to prove that some or all necessary services will be unavailable from income- and asset-blind sources.

 The defendants urged at oral argument that if the Viccaro holding is to be extended in this manner, it ought to be done by the SJC, not a trial court. Certainly, the last word on this and other legal issues belongs to the highest appellate court with jurisdiction. It is usually a trial court, however, which must necessarily deliver the first word. It is our job to know and understand the relevant precedents as best we can and, where the appellate courts have not yet spoken, apply our best judgment to the problem, mindful of what existing caselaw suggests will most likely be the answer at the appellate level. Sometimes we succeed, see Malonis v. Harrington, 442 Mass. 692 (2004), sometimes not, see Commonwealth v. Dorazio, 472 Mass. 535 (2015), but the appellate courts always have our back. Finally, where a legal issue is close, submitting the challenged claim to the trier of fact via carefully crafted special questions can often avoid the need for retrial of a civil case, whatever the appellate outcome.